406 A.2d 333

**COMMONWEALTH of Pennsylvania**

v.

**Arnold BOLDEN, Appellant.**

Supreme Court of Pennsylvania.

Argued April 26, 1979.

Decided Oct. 1, 1979.

384

Raymond J. Takiff, Philadelphia, for appellant.

Robert B. Lawler, Chief, Appeals Div., Asst. Dist. Atty., Cynthia H. Severinsen, Philadelphia, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, NIX, MANDERINO and LARSEN, JJ.

## OPINION OF THE COURT

NIX, Justice.

Appellant was convicted by a jury of murder of the third degree and a weapons offense. A sentence of imprisonment of seven to fourteen (7–14) years was entered on the murder indictment and sentence was suspended for the weapons offense. This direct appeal followed.

On September 8, 1975, appellant entered a neighborhood bar in the City of Philadelphia, and during conversation with the bartender stated that he planned to shoot his paramour, Janet Elrod. The next day (September 9, 1975), appellant

returned to the bar and gave the bartender a gun in a paper bag. The weapon was later retrieved by the police.

During the early morning hours of September 9, 1975, Ms. Elrod and Marguerite Gibson King, who resided with Ms. Elrod, met appellant on the street as the two ladies were returning to their home. Ms. Elrod and appellant had been feuding as a result of Ms. Elrod's earlier request that appellant move out of the home where he had resided with her. As appellant approached them on the street, he stated to Ms. King "bitch, you are going to die." The three persons entered the house, whereupon the appellant continued swearing at Ms. King stating that it was her fault that he had been requested to leave the residence. Appellant then struck Ms. Elrod in the head with the gun handle and punched Ms. King causing her to fall. As Ms. King attempted to rise, appellant shot her and then kicked her in the face. Thereafter, appellant threatened to kill Ms. Elrod because she had witnessed the event, but, instead forced her to assist him in removing the body of Ms. King to a nearby alley. The gunshot wound caused the death of Ms. King.

[1] The first assignment of error addresses the denial of appellant's motion to suppress his inculpatory statements given to police officials. His attack upon this ruling is two-pronged. First, he argues that the Commonwealth had violated Pa.R.Crim.P. No. 308 in responding to his motion to suppress, and as a consequence, the relief requested in the motion should have been granted. At the time of this pre-trial proceeding, rule 308 required that an answer be filed to pre-trial applications not later than seven (7) days from the service of the application, unless "good cause" was shown for not filing the required answer. Failure to comply with the answer requirement resulted in the well pleaded facts contained in the application being deemed admitted by the party failing to respond.[1] In this matter, an answer

1. Compare, *Commonwealth v. Reason,* 485 Pa. 450, 402 A.2d 1358 (1979) (applying Rule 323), with *Commonwealth v. Pugh,* 476 Pa. 445, 383 A.2d 183 (1978) (applying Rule 308). Under Rule 323 appellant's present argument is frivolous since it is based solely upon

was, in fact, filed by the Commonwealth in response to appellant's pre-trial motion. Appellant's objection goes to the specificity of the denials contained in the answer. Thus, the thrust of appellant's attack is that the motion court should have required the "niceties" of pleading, mandated in civil practice. *See e. g.* Pa.R.C.P. No. 1029(b)(which provides that a responsive pleading must specifically deny well pleaded averments of facts). While the motion court admonished the Commonwealth for its lack of specificity, it properly refused appellant's request that the·allegations in the motion should be deemed admitted. Although rule 308 provided authority for the motion court to grant the requested relief if no answer had been filed and there was no showing of "good cause" for the omission, *Commonwealth v. Pugh*, 476 Pa. 445, 449, 383 A.2d 183, 185 (1978); *Commonwealth v. Eller*, 232 Pa.Super. 99, 332 A.2d 507 (1974), the rule did not authorize the imposition of the sanction where an answer was in fact filed. We, therefore, cannot find error in the court's refusal to grant relief which it had no authority to give.

The second aspect of appellant's challenge to the suppression ruling is substantive in nature. It is urged that the suppression record requires finding that there was a violation of Pa.R.Crim.P. No. 130. *See Commonwealth v. Futch*, 447 Pa. 389, 290 A.2d 417 (1972). Appellant argues that his inculpatory statements resulted from a twelve hour unnecessary delay between his arrest on these charges and his arraignment. We need not reach the merits of this argument since the issue was not specifically alleged as one of the bases for the suppression request and therefore it has not been properly presented for review. The allegations set forth in appellant's motion to suppress challenged the voluntariness of the statement and the absence of the warnings. Our prior law has made clear that a rule 130 violation must

the language of Rule 308. Assuming, arguendo, that Rule 308 does apply to the present case, appellant's contention fails on the merits for the reasons set forth in the text. Moreover, Rule 308 has subsequently been modified to remove the answer requirement "unless ordered by the court," effective January 1, 1978.

be specifically asserted pursuant to Pa.R.Crim.P. No. 323(b) and will not be treated as being subsumed in a general claim that the statement was not knowingly or voluntarily given. *Commonwealth v. Gilmore,* 464 Pa. 464, 466–67, 347 A.2d 305, 307 (1975).

Appellant next attacks the admissibility of the testimony of the medical examiner. The crux of this argument is that the Commonwealth failed to establish that the body examined by the witness was in fact the body of the victim in this case. The record provides no support for this contention. Dr. Fillinger testified that on September 9, 1975, at 10 a. m., he examined the body of a female in the alley adjacent to the deceased's residence. He stated further that later that day, he performed an autopsy on the same body in his office. Ms. Elrod testified that she had assisted appellant in placing the body in the aforementioned alley after the shooting. The trial testimony established the shooting occurred at or about 2 a. m. on September 9, 1975. At 7:42 a. m. on September 9, 1975, a body of a dead female was first found by the police in the alley.

The essence of appellant's argument is that these gaps in time provide a basis for concluding that the body first seen by Dr. Fillinger was not the body of the deceased that had been dragged in the alley after the shooting. In support of this rather bizarre position, appellant points to the fact that the officer who first discovered the body described it as being that of a female approximately 5 feet, 3 inches tall and weighing approximately 125 pounds, and Dr. Fillinger's subsequent examination found that the body was approximately 5 feet, 6 inches in length and weighed 145 pounds. The question being framed is analogous to whether or not the chain of custody of physical evidence has been properly established. The law is clear that physical evidence may be properly admitted despite gaps in testimony regarding its custody. *Commonwealth v. Royster,* 472 Pa. 581, 372 A.2d 1194 (1977); *Commonwealth v. Ford,* 451 Pa. 81, 301 A.2d 856 (1973). We have reasoned that gaps in the chain of custody go to the weight to be given to the

testimony, not to its admissibility. Applying that reasoning to the instant situation, it is clear that the question being raised is also one of credibility, and not of admissibility. The appellant would have us find, as a matter of law, that the jury should not have been allowed to conclude that the body viewed and examined by Dr. Fillinger was in fact the body of the victim of this homicide. Such a result is obviously unwarranted, particularly in view of the absence of any testimony suggesting that this particular alley was used as a place of storage for the bodies of deceased females.

Appellant further charges that the presumption of innocence and the burden of proof were violated by the "overreaching on the part of certain Commonwealth witnesses." This contention consists of a hodgepodge of frivolous complaints from which we are asked to draw the conclusion that the cumulative effect was to deny the appellant due process. For instance, it is argued that the testimony of a police officer that he was protecting "the crime scene" improperly removed from the jury their function of determining whether a crime had been committed. The absurdity of this position is obvious and needs no further explication. Moreover, appellant states that the testimony of Ms. Elrod that appellant had said to her, "I have to shoot you too because you're the only witness and *I'm not going back to jail,*" was improperly admitted. While this objection may appear to have some substance at first blush, it is clear from the circumstances surrounding the admission of this testimony that the present objection is completely devoid of merit. Prior to the admission of this statement, the Commonwealth requested a conference out of the hearing of the jury to discuss the admissibility of this evidence. During that conference, the Commonwealth made an offer of proof. When defense counsel was called upon to state his position with regard to the proposed testimony, he responded as follows:

I have nothing to say at this time. I don't think counsel or defense should be in such a position but I would hope that if it does come out the Court will be in a position or rather I then may have something to say about it.

It was not until Ms. Elrod testified that defense counsel objected to the statement, asserting that it implied prior criminal activity by his client.

■ Where counsel is afforded an opportunity to object to possible prejudicial testimony prior to its admission, he cannot remain non-committal thereby allowing the evidence to be introduced, and then, belatedly, object to its introduction. The remedy of a mistrial is an extreme one and should be invoked only where the ends of justice dictate. Here, attention was called to the fact of the questionable nature of the proposed testimony. Defense counsel had ample opportunity prior to the admission of this evidence to argue and support his position that it should not be introduced. *See Commonwealth v. Clair,* 458 Pa. 418, 326 A.2d 272 (1974). We, therefore, conclude that this due process argument is also without substance.[2]

■ In his last assertion of error, appellant makes the blanket statement that "the trial was replete with violations of the opinion evidence rule." In support of this argument, he cites only the admission of the testimony of the ballistics expert. Even in this regard, his only apparent complaint is that the Court prematurely cut off the cross-examination of this witness as to qualifications. The witness was called upon to testify that he had test-fired the revolver that had been secured from the bartender, and as a result of his test, concluded that it was the murder weapon. The record reveals that the witness had been assigned to the Firearms Identifications Unit of the Philadelphia Police Department for nine (9) years. Additionally, the witness had attended ordnance school at Aberdeen proving ground, and studied under a number of experts in the field of ballistics. An examination of the cross-examination does not reflect any fact which questions the court's ruling that the witness was qualified to testify as an expert in this area, nor does it

---

2. In this context, appellant also calls attention to an alleged argumentative comment by the District Attorney during the trial. While the remark may well have been inappropriate, it was of the type that was easily remedied by the trial court's prompt curative instructions. *Commonwealth v. Goosby,* 450 Pa. 609, 611, 301 A.2d 673 (1973).

indicate that further questioning would have proven fruitful in this regard. We are, therefore, constrained to find that this objection is also meritless.

Judgment of Sentence is affirmed.

MANDERINO, J., concurred in the result.

EAGEN, C. J., did not participate in the consideration or decision of this case.