**UGI UTILITIES, INC., Petitioner,**

v.

**UNEMPLOYMENT COMPENSATION BOARD OF REVIEW,**
**Respondent.**

Commonwealth Court of Pennsylvania.

Argued Dec. 8, 2003.

Decided June 7, 2004.

1168, 1173 (1991). A statement of policy does not have the force of law. *Id.*

Adam R. Long, Harrisburg, for petitioner.

Judith M. Gilroy, Harrisburg, for respondent.

BEFORE: COLINS, President Judge, and LEAVITT, J., and McCLOSKEY, Senior Judge.

OPINION BY Judge LEAVITT.

UGI Utilities, Inc. (Employer) petitions for review of the adjudication of the Unemployment Compensation Board of Review (Board) granting Charlyse Nelson (Claimant) unemployment benefits. In doing so, the Board affirmed the Referee's decision that Employer failed to sustain its burden of proving willful misconduct under Section 402(e) of the Unemployment Compensation Law (Law)[1] when Claimant was discharged for violating Employer's drug use policy. The issues before us are whether the Board erred because it ap-

plied Section 402(e) rather than the newly enacted Section 402(e.1) of the Law[2] to this case and, concomitantly, whether Employer satisfied the evidentiary burden established by Section 402(e.1).

Claimant worked for Employer as an Operations Representative from March 19, 2001 to January 3, 2003. As were all employees, Claimant was expected to comply with Employer's substance abuse policy (Substance Abuse Policy), which prohibited the use of illegal drugs while working. To ensure compliance, employees were required to submit to random drug testing that were conducted in accordance with standards adopted by the United States Department of Transportation (DOT)[3] for workplace drug and alcohol testing. Employer's Substance Abuse Policy was contained in the Employee Handbook (Handbook) that was distributed to all employees, including Claimant. Reproduced Record 12a (R.R. ___).

On November 7, 2002, Claimant submitted to a random drug test and was found to be positive for cocaine use. Because Claimant had been employed for over a year, she was eligible to participate in Employer's substance abuse rehabilitation program (Program). This Program required, *inter alia*, Claimant's successful completion of a rehabilitation regimen, at the end of which she signed a "Last Chance Agreement," agreeing to twice monthly drug testing for a period of three months after her return to work. Claim-

---

**1.** Section 402(e) of the Unemployment Compensation Law, Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(e), provides,

An Employee shall be ineligible for compensation for any week—
* * *
(e) In which his unemployment is due to his discharge or temporary suspension from work for willful misconduct connected with his work, irrespective of whether or not

such work is employment as defined in this act.

**2.** Section 402(e)(1) of the Law, 43 P.S. § 802(e.1), makes an employee ineligible for compensation where unemployment is caused by the employee's refusal to take a drug test or failure to pass it.

**3.** *See* 49 C.F.R. §§ 40.1—40.413 (2004).

ant returned to work on November 22, 2002.

On December 30, 2002, Claimant submitted to a post-rehabilitation drug test and, again, tested positive for cocaine. Claimant denied using cocaine, but she declined to have her sample re-tested, citing the expense she might incur. Employer terminated Claimant for violation of the Substance Abuse Policy, and Claimant applied for unemployment compensation. Her application was denied by the Office of Employment Security, which reasoned as follows:

> In this case, the facts indicate that the Employer's request for the drug and alcohol test was reasonable and that the Claimant was aware of the rule. In addition, the Claimant has not shown good cause for the test results. As such, the Employer has sustained its burden of proof and the Claimant's actions constitute willful misconduct ... under Section 402(e).

Notice of Determination at 1. Claimant appealed, and a hearing was convened before a Referee.

At the hearing, the Referee admitted Employer's Handbook into evidence. The Referee also admitted, without objection from Claimant, the "Federal Drug Testing Custody and Control Form" (Federal Form),[4] documenting the chain of custody on Claimant's sample, and a report from Employer's Medical Review Officer (MRO) on each of Claimant's drug tests. Exhibits 1 and 4, R.R. 64a, 68a. These documents were offered to show that the tests on Claimant's sample were conducted in ac-

cordance with the Substance Abuse Policy, *i.e.,* the DOT regulations, and that the tests demonstrated the presence of cocaine.[5] Finally, the Referee admitted into evidence two reports[6] prepared by Quest Diagnostics Incorporated on Claimant's two drug tests, each of which concluded that

> the chains-of-custody are intact. The paperwork indicates that our laboratory procedures were accurately followed in the handling and testing of this sample, and that the results obtained are accurate.

R.R. 73a.

After reviewing the evidence, the Referee reversed the decision of the Office of Employment Security. The Referee reasoned that,

> [t]he employer has the burden of showing that the claimant's actions constituted willful misconduct under Section 402(e) of the Law. In this case, the employer has failed to sustain its burden.

> The courts have held that the employer must successfully show that the urinalysis report is a "business record" which is not excludable hearsay and then the employer must show and prove "chain of custody" so that it demonstrates that the urine referred to in the report is the same urine provided by the claimant.

> The Employer was able to provide sufficient testimony to show the urinalysis report is a business record. *However, the employer did not provide sufficient testimony in regard to the "chain of*

---

**4.** DOT regulations require a testing laboratory to use this form to document the chain of custody of the specimen within the lab. 49 C.F.R. § 40.45(a).

**5.** Employer also presented the testimony of Keith E. Hartman, Operations Supervisor, Virginia L. Crews, Human Resources Super-

intendent, and David Craft, Safety and Health Coordinator. These witnesses testified to the events leading to Claimant's termination and produced the documentation relevant here. Claimant testified on her own behalf.

**6.** The reports are each over 70 pages in length.

custody." *The information on the "chain of custody" that was provided, while detailed and exhaustive, remains hearsay and, as such, cannot be considered in rendering this determination.*

\* \* \*

Based on the failure of the employer to competently document the chain of custody, the claimant must be considered eligible for benefits under Section 402(e) of the Law.

Referee Opinion at 2 (emphasis added). Employer appealed to the Board, which affirmed without opinion. Employer then filed a petition for review with this Court.[7]

On appeal, Employer raises three issues. First, it contends that the Board erred because it applied Section 402(e) of the Law when it is another statutory provision, *i.e.*, Section 402(e.1), that governs eligibility for unemployment compensation benefits after an employee fails to pass a drug test. Second, Employer contends that its evidence satisfied Section 402(e.1) because the drug test that Claimant failed was conducted in accordance with the testing procedures in Employer's Substance Abuse Policy. Third, Employer argues the Board erred in refusing to give any evidentiary weight to the drug test results after they were admitted into evidence without objection.

■ We consider, first, Employer's contention that it was error for the Board to apply Section 402(e) of the Law, a general provision that denies benefits to an employee discharged for willful misconduct. The recently enacted Section 402(e.1) of the Law[8] speaks to specific willful miscon-

duct, *i.e.*, failure to pass a drug test. It provides in relevant part that

> [a]n Employee shall be ineligible for compensation for any week—
>
> \* \* \*
>
> (e.1) In which *his unemployment is* due to discharge or temporary suspension from work *due to failure to* submit and/or *pass a drug test conducted pursuant to an employer's established substance abuse policy,* provided that the drug test is not requested or implemented in violation of the law or of a collective bargaining agreement.

43 P.S. § 802(e.1) (emphasis added).

We agree with Employer that it was error for the Board to conclude, in effect, that there is no difference between Section 402(e) and Section 402(e.1). Willful misconduct has long been construed to include the violation of a work rule, including a work rule prohibiting the use of drugs at the workplace. *See, e.g., Walton v. Unemployment Compensation Board of Review*, 797 A.2d 437 (Pa.Cmwlth.2002). It must be that the Legislature meant to effect some change in the Law when it enacted Section 402(e.1). The Board's argument would render Section 402(e.1) mere surplusage; we are charged, however, to give effect to all the language in a statute. *Masland v. Bachman*, 473 Pa. 280, 374 A.2d 517 (1977).

Next, we consider the evidentiary issues raised by Employer, which requires that we puzzle out the extent of the change effected by Section 402(e.1) of the Law. Employer argues that under the plain lan-

---

**7.** Our scope of review is limited to determining whether the Board's findings of fact are supported by substantial evidence in the record, whether errors of law were committed or whether constitutional rights were violated. *Ellis v. Unemployment Compensation Board of Review*, 749 A.2d 1028 (Pa.Cmwlth.2000).

**8.** Section 402(e.1) was added by Section 3 of the Act of December 9, 2002, P.L. 1330 and became effective immediately.

guage of the statute,[9] its burden was to show simply that Claimant failed a drug test that was conducted in accordance with its Substance Abuse Policy. Employer did so, it argues, through the testimony of its human resources personnel and through the lab reports showing the presence of cocaine in Claimant's system on two occasions. The burden then shifted to Claimant to prove that the drug test was not conducted in accordance with the law or with a collective bargaining agreement. Here, Claimant did not take up that burden.[10] Stated otherwise, Employer believes that the Legislature intended to change the evidentiary burdens from what they had previously been, as established by case law,[11] prior to the enactment of Section 402(e.1) of the Law.

■ We agree that Section 402(e.1) requires an employer to show that it followed its established "substance abuse policy" in discharging an employe for drug use on the job. In this case, Employer's Substance Abuse Policy set a high standard for employee drug tests by obligating Employer to test in accordance with regulations adopted by DOT.[12] Those regulations require, in pertinent part, using a laboratory certified by the federal government[13] and having the test results reviewed by the MRO, who must be a physician knowledgeable in drug use disorders.[14] It is the MRO's responsibility to

---

9. When the language of a statute is clear, its words are to be given their plain and ordinary meaning. 1 Pa.C.S. § 1903(a); *Department of Transportation, Bureau of Driver Licensing v. Lear*, 151 Pa.Cmwlth. 138, 616 A.2d 185, 187 (1992).

10. She did not assert that the drug test was unlawful only that its results were, perhaps, explained by the vitamins she was taking.

11. *See, e.g., Broadus v. Unemployment Compensation Board of Review*, 721 A.2d 70 (Pa. Cmwlth.1998).

12. The Substance Abuse Policy stated as follows:

To maintain a drug-free work environment, and to comply with the regulations adopted by the United States Department of Transportation (DOT), the Company has adopted a Drug Testing Program. As part of this program, all job applicants and employees will be required under the circumstances described to submit a urine and/or blood sample for drug testing. *Samples submitted by applicants will be tested for drugs identified in the DOT regulations* and for additional drugs at detection levels more strict than those required by DOT.

The Company will retain the services of a competent laboratory certified by the United States Department of Health and Human Services to test urine and/or blood samples, and to analyze the results of the tests on all samples to eliminate negative samples from further consideration. A second confirmatory test, known as a gas chromatography/mass spectrometry test, will be performed on all positive samples. The Company has chosen these tests because they are generally accepted as being the most accurate and reliable tests available for detecting drugs in a person's system. *The Company will also retain the services of a Medical Review Officer (MRO)* who is a licensed physician knowledgeable in drug abuse disorders and the pharmacology and toxicology of drugs. The MRO will review and interpret all positive test results to determine whether alternative medical explanations could account for the positive test results. The MRO will report all positive tests to the designated Human Resources representative. The Human Resources representative may then inform other appropriate management official on a need-to-know basis.

R.R. 13a–14a (emphasis added).

13. DOT regulations require that drug testing be done by a "laboratory located in the U.S., ... certified by [The Department of Health and Human Services] under the National Laboratory Certification Program (NLCP) for all testing required under this part." 49 C.F.R. § 40.81(a).

14. DOT regulations define a MRO as "[a] person who is a licensed physician and who is responsible for receiving and reviewing laboratory results generated by an employer's

determine whether there is an alternative medical explanation for a positive drug test.[15]

It is beyond peradventure that Employer's documents that were admitted into evidence showed that Claimant's sample was tested in accordance with the DOT regulations (and Employer's Substance Abuse Policy). Employer used a certified laboratory, Omega Medical Laboratories to test Claimant's sample. The sample was handled to ensure that the chain of custody was intact.[16] The MRO, Dr. Jerome Marcus, reviewed the test results to ensure their accuracy, and then he contacted Claimant to determine whether another reason could explain Claimant's positive test results.[17]

The question is whether this documentary evidence was entitled to any weight. The Board agreed that

> Employer presented an impressive amount of documentation concerning the chain of custody of Claimant's sample. However, there were no witnesses who could testify to the procedures used to obtain the sample or the procedures for handling and testing the sample.

Board's Brief at 3. Absent such testimony, the Board contends that Employer failed to prove that the sample on which the drug tests were performed belonged to Claimant.[18] In addition, the Board con-

---

drug testing program and evaluating medical explanations for certain drug test results." 49 C.F.R. § 40.3. The MRO is responsible for "acting as an independent and impartial 'gatekeeper' and advocate for the accuracy and integrity of the drug testing process ... and [p]roviding a quality assurance review of the drug testing process for the specimens under your purview." 49 C.F.R. § 40.123(a), (b).

15. The MRO determines "whether there is a legitimate medical explanation for confirmed positive, adulterated, substituted, and invalid drug test results from the laboratory." 49 C.F.R. § 40.123(c). In doing so, when the MRO receives a positive test result, he must "contact the employee directly (i.e., actually talk to the employee), on a confidential basis, to determine whether the employee wants to discuss the test result." 49 C.F.R. § 40.131(a); see also 49 C.F.R. § 40.137(b); 49 C.F.R. § 40.129(a)(4). The MRO has to report all drug test results to the employer. See 49 C.F.R. § 40.163(a).

16. When Claimant provided a urine sample at Omega on December 30, 2002, she signed the Federal Form attesting as follows:

> I certify that I provided my urine specimen to the collector; that I have not adulterated it in any manner; each specimen bottle used was sealed with a tamper-evident seal in my presence; and that the information provided on this form and on the label affixed to each specimen bottle is correct.

R.R. 69a. The technician collecting Claimant's sample also signed the Federal Form attesting that "the [sample] given to me by the donor identified in the certification section ... of this form was collected, labeled, sealed and released to the Delivery Service noted in accordance with applicable Federal requirements." Id.

17. After the interview, Dr. Marcus concluded as follows: NO THERAPEUTIC EXPLANATION FOR FINDINGS. IMPRESSION: DRUG SCREEN FOR COCAINE." R.R. 68a. Both a chemical and gas chromatography/mass spectrometry test were performed to determine the presence of cocaine.

18. The Board directs this Court to case law developed under Section 402(e) of the Law where employers have satisfied chain of custody concerns, i.e., linking the results of the laboratory tests to the sample collected by employer from claimant. See Brunson v. Unemployment Compensation Board of Review, 131 Pa.Cmwlth. 462, 570 A.2d 1096 (1990) (holding that employer established chain of custody for claimant's urine sample by testimony of a lab technician describing the procedure for handling a sample, a chain of custody form signed by employee and testimony of the toxicologist who tested the sample); Artis v. Unemployment Compensation Board of Review, 699 A.2d 849 (Pa.Cmwlth.1997) (holding that employer proved chain of custody by testimony of a laboratory supervisor regarding the procedures used, testimony of

tends that "the contents of the record may contain inadmissible hearsay if they are not otherwise supported by an adequate foundation." Board Brief, 6, n. 2. The Board contends that testimony from David Craft, Employer's custodian of the reports received from the laboratory, was an inadequate foundation for that portion of the lab report stating the results of Claimant's drug tests.

In *Philadelphia Gas Works v. Unemployment Compensation Board of Review*, 671 A.2d 264 (Pa.Cmwlth.1996), this Court addressed the evidentiary issues, including chain of custody, raised by using lab reports to prove drug use in violation of an employer's workplace policy.[19] The evidence offered by the employer in *Philadelphia Gas Works* was, as here, a positive test recorded in laboratory reports. The employer's MRO, Dr. Barlow, testified about the testing procedures and results; then

> Dr. Barlow offered the laboratory reports which were admitted without objection and also offered the chain of custody file.

*Id.*, 671 A.2d at 265. The Board held that the lab reports were not competent evidence to prove a violation of the employer's policy. We reversed.

In doing so, this Court reasoned as follows. First, the drug test reports were found admissible under Section 6108 of the

Uniform Business Records as Evidence Act, 42 Pa.C.S. § 6108. Second, we held that drug test results contained in a lab report are fact, not opinion, evidence and, as such, not hearsay by reason of Section 6108. In so holding, we relied upon *Commonwealth v. Seville*, 266 Pa.Super. 587, 405 A.2d 1262 (1979), wherein it was observed that blood tests are widely accepted as trustworthy and, thus, it was not necessary to have the results verified by testimony of the technician who actually performed the tests. We held that tests conducted on urine samples to determine the presence of cocaine are similarly trustworthy. Such medical "facts" contained in a lab report are, therefore, admissible and not hearsay. Finally, we held that such results cannot be refuted by a claimant's self-serving testimony that he did not use cocaine.

■ In sum, the lessons of *Philadelphia Gas Works* are several. First, lab reports and chain of custody control files should be admitted through the testimony of an MRO. Second, the foundation inquiry, including chain of custody, should be conducted before, not after, documents relating to test results are admitted into the record. Third, the medical fact of a positive drug test contained in a lab report is not inadmissible hearsay. Mindful of these lessons, we turn to this case.

---

technicians who received the sample, and a form signed by the employee indicating that the sample was his and had been sealed in his presence); *Ellis v. Unemployment Compensation Board of Review*, 749 A.2d 1028 (Pa. Cmwlth.2000) (holding that the employer failed to prove chain of custody when it produced no evidence to establish the chain of custody of claimant's sample *before* it was received by the lab for testing). Notably, in each of these cases, chain of custody was raised by the litigant, who lodged an objection and preserved the issue. By contrast, in this case the issue was raised *sua sponte* by the

adjudicator, after the lab report was admitted into evidence.

**19.** The laboratory tests at issue in *Philadelphia Gas Works* were conducted in accordance with federal regulations, which appear to be the DOT regulations. The DOT regulations may have since been revised since 1996 when *Philadelphia Gas Works* was decided, but they appear the same in all material respects as the regulations followed here by Employer.

We agree with the Board that Employer should have introduced the drug test results and chain of custody documentation through the testimony of Dr. Marcus, Employer's MRO.[20] However, once these documents were admitted through the testimony of Employer's health and safety officer, David Craft, without objection from Claimant, it was too late for either Claimant or the Board to object to their probative value.

Chain of custody is an inquiry undertaken to demonstrate the relevancy and admissibility of proffered evidence.[21] Laboratory reports showing the outcome of tests on urine samples are irrelevant unless the factfinder has some assurance that the reports relate to the right sample. Technically, a chain of custody inquiry requires that each individual that came into contact with Claimant's urine sample testify as to the handling of that sample. However, this is not how the rules of evidence have been applied in Pennsylvania. *Commonwealth v. Snyder*, 254 Pa.Super. 186, 385 A.2d 588 (1978) (holding that all who come into contact with evidence need not testify as live witnesses). Further, gaps in the chain of custody, such as time, go to the weight of testimony offered on chain of custody and not the admissibility of the testimony. *Commonwealth v. Bolden*, 486 Pa. 383, 406 A.2d 333 (1979).[22] Claimant did not assert a gap in the chain of custody, and Employer's chain of custody documents were admitted, without objection, to prove that the sample tested was that of Claimant. *Philadelphia Gas Works*, 671 A.2d at 265.

The Board argues that the testimony of Employer's personnel was inadequate to prove chain of custody and, therefore, the lab reports showing drug use by Claimant are not entitled to any weight. There are several flaws to this argument. First, the Referee found this testimony sufficient to have the lab report admitted as a business record. The Board cannot offer a principled distinction for allowing Craft's testimony to support admission of the lab report but not the chain of custody files. They all came to Employer from the same source and, are, in effect, one record. Second, the Board's argument appears to be based on a misapprehension of *Bolden*, 486 Pa. at 388–389, 406 A.2d at 335, which held that gaps in chain of custody go to weight, not admissibility. *Bolden* held that a witness may testify on chain of custody even though the witness cannot testify to every minute of the specimen's handling. It is the province of the factfinder to weigh the value of such testimony in deciding whether to admit a specimen, or report on said specimen, notwithstanding gaps in the chain of custody.[23] This approach, however, is not appropriate where, as here, no gap in the chain of custody has been as-

20. However, these documents could have been admitted by stipulation of the parties or the admission by Claimant that the sample tested was hers and the lab report on that sample authentic. *See* footnotes 29 and 30, *infra*.

21. Authentication and identification represent a special aspect of relevancy. *United States v. Perlmuter*, 693 F.2d 1290, 1292 (9th Cir. 1982).

22. DOT regulations require procedures to ensure that a test result satisfies chain-of-custo-

dy concerns. As noted, the Federal Form documents the handling of an employee's urine sample from the time the employee gives the sample to the collector until the sample is destroyed. 49 C.F.R. § 40.3; *see also* 49 C.F.R. § 40.45(a).

23. Of course, at some point, the gaps may be so significant that the proponent's testimony will be assigned so little weight as to be inadequate. In that case, the specimen, or report on the specimen, will be denied admission as evidence.

serted by Claimant, the Referee or the Board. At no point did Claimant assert, for example, that it was not her signature on the specimen control form that was filled out when the sample was given. Third, there is no "weight" that can be given irrelevant evidence.[24] If the specimen tested cannot be identified, then a report on the specimen's testing is of no moment. Stated otherwise, under the guise of assigning appropriate weight to admitted evidence, the factfinder cannot reverse himself on a decision to admit evidence.

■ More to the point, chain of custody is not an end into itself but, rather, an inquiry undertaken to determine whether a lab report on drug test results is admissible. Here, Claimant never objected to the relevance of the lab reports, i.e., their chain of custody, and she never asserted that the reports described another person's sample. Once the lab reports were admitted, it was too late for Claimant (or the Referee) to raise chain of custody. Further, in order to preserve the chain of custody issue,[25] there must be a proper objection lodged. In this case, Claimant did not object to the admission of the lab reports on any ground; accordingly, the chain of custody issue was waived.

■ The only remaining issue is whether the contents of the lab reports can be given probative value. The Board concedes that the lab reports were properly admitted.[26] However, it contends that the drug test results that appear in the lab reports may be hearsay.[27] The Board's

24. Pennsylvania Rules of Evidence No. 402 provides that "[e]vidence that is not relevant is not admissible."

25. The same is true with other foundation issues. It is too late to object to the authenticity of a document once admitted. A party cannot argue that the factfinder should give zero weight to an admitted document because the document is a forgery. Forgery goes to admissibility, not weight.

26. This is inconsistent with the Board's position that those reports lack a proper foundation with respect to chain of custody.

27. In response to the Board's hearsay argument, Employer responds that under *Walker v. Unemployment Compensation Board of Review*, 27 Pa.Cmwlth. 522, 367 A.2d 366, 370 (1976), the drug tests results on Claimant are corroborated by Claimant's prior positive drug test, which she does not challenge, and by Claimant's refusal to have the December 30, 2002 sample re-tested. Under *Walker*, hearsay admitted without objection will be given its natural probative effect if supported by "any competent evidence in the record." *Id.* The *Walker* rule, known as the "legal residuum" rule has been applied strictly. However, this rule should be reexamined, at least in this context where the only way to prove drug use is by a drug test, and a report of those results is the only reliable way to prove the results of those tests. To require corroboration of a scientific test with evidence that has nothing to do with the test itself strains the law of evidence. *See* Daniel R. Schuckers and John L. Gedid, *Hearsay Evidence in Administrative Proceedings—Pro and Con Views on the "Legal Residuum" Rule*, Pennsylvania Bar Quarterly, Jan. 2004 at 1–9. The legal residuum rule is contrary to the rules of evidence in both civil and criminal judicial proceedings, which allow the factfinder to make findings of fact based upon unobjected hearsay. *See, e.g., Commonwealth v. Foreman*, 797 A.2d 1005 (Pa.Super.2002).

As is any scientific test, whether on Pennsylvania streams to determine the presence of toxins or on human samples to determine drug and alcohol abuse, the focus should be on the reliability of the tests. The factfinder needs to find that they were conducted in accordance with sound scientific principles and methodology.

Notably, the DOT regulation requires an MRO to review the accuracy and integrity of the testing process for all samples under his purview. 49 C.F.R. § 40.123. The MRO may not verify a positive test result if he discovers certain flaws that occurred during the processing of the employee's sample. *See* 49 C.F.R. § 40.199(a) (enumerating fatal flaws that occur during the laboratory's processing

position is untenable. First, the Referee admitted the reports, *in toto*, as business records. As in *Philadelphia Gas Works*, the statements in those reports showing that Claimant tested positive for cocaine use while on the job are medical facts and not hearsay, as claimed by the Board. Second, Claimant's self-serving testimony that she had not used cocaine was not competent to refute the medical facts reported by the lab in the reports admitted as business records. *Philadelphia Gas Works*, 671 A.2d at 268.

▆▆▆▆ We do not agree that the enactment of Section 402(e.1) of the Law was intended to work a sea change in the rules of evidence for determining ineligibility for benefits where a claimant has abused drugs.[28] Absent confession, in which case there would be no contest, there is no way to prove drug use except by a drug test result. However, a lab report requires a foundation. The proponent of a lab report must present evidence sufficient to support a finding that the report is what its proponent claims. *Commonwealth v. Brooks*, 352 Pa.Super. 394, 508 A.2d 316, 320 (1986) (evidence must support a reasonable inference that the lab report is authentic and not a forgery). In this case, the appropriate way to lay a foundation as to authenticity and chain of custody was by testimony of the MRO.[29] However, any claim that a report's foundation is inadequate should be raised and preserved by the litigant at the hearing at the point in the hearing when the lab report's admissibility is under consideration.[30]

▆▆▆▆ However, there are ways to expedite the foundation inquiry. In a civil proceeding, questions of chain of custody and authentication are normally handled in the discovery phase. Only where discovery reveals a significant gap in the chain of custody or genuine question of authentication will the admissibility of the proffered lab report be contested at the hearing. We recognize that administrative hearings do not authorize discovery. *Weinberg v. Insurance Department*, 41 Pa.Cmwlth. 319, 398 A.2d 1120 (1979). Nevertheless, parties to an administrative hearing can

---

of samples); *see also* 49 C.F.R. § 40.203(a) (listing correctable flaws occurring during laboratory's processing of sample).

28. We agree with the Board that the change effected by Section 402(e.1) was not such that it required a new hearing before the Referee. For another case is an explication on the precise differences between Section 402(e) and (e.1) in the context of willful misconduct by an employee violating a work rule against drug use.

29. The Employer authenticated the lab report, and chain of custody files by the testimony of its human resources personnel, arguing that these documents were business records. Because the Referee admitted the documents on that basis, they could be relied upon to prove that it was Claimant's sample, not another, and that the sample tested positive for cocaine use.

Not just in Pennsylvania, but in other jurisdictions as well, drug test results on employees have been admitted as business records.

*See, e.g., March v. Victoria Lloyds Insurance Company*, 773 S.W.2d 785 (Tex.App.1989). In *March*, the report of a lab analysis showing blood alcohol content of 0.16% was admitted, over objection, as a business record accompanied by an affidavit of the County medical examiner. The appellants objected that the report was inadmissible hearsay, not a business record and challenged the chain of custody. The Texas Appeals Court rejected appellants' argument and held that the lab analysis was competent evidence to prove intoxication by the decedent at the time of his fatal accident, thereby rendering him ineligible for workers' compensation.

30. Of course, a lab report without any foundation presented by the offeror may still be admitted. Foundation, like all evidentiary issues, requires vigilance by the litigant. Once a document is admitted, however, it is too late to challenge its lack of foundation.

make use of a prehearing conference to address admissibility of a lab report, as a means to expedite the proceeding. 1 Pa. Code § 35.112.[31] Admissions and stipulations may be used to effect a lab report's foundation, including chain of custody and authentication. 1 Pa.Code § 35.116.[32] Indeed, a party that refuses to make a reasonable admission or to stipulate to the authenticity of a proffered lab report may be held liable for the other party's costs "in making such proof." *Id.* In any hearing, whether judicial or administrative, the focus of the factfinder should be on the merits of a proffered report, *i.e.*, whether the test results are scientifically sound and, therefore, reliable[33] as opposed to whether the report on drug test results was the actual one issued by the lab and the sample tested was the relevant one.

■ To conclude, we hold that Section 402(e.1) of the Law requires an employer to demonstrate that it had adopted a substance abuse policy that was violated by the employee in order for that employee to be rendered ineligible for benefits.

The terms of that policy may be trumped by a statute or collective bargaining agreement, but it is the claimant's burden to develop the record appropriately to succeed in that defense. However, Section 402(e.1) does not relieve an employer of laying a foundation for a drug test report. Here, Employer used the testimony of its human relations personnel to demonstrate chain of custody and foundation, *i.e.*, relevancy and authenticity, of the lab report showing Claimant's positive drug test results. Although irregular, once admitted, Employer's lab reports of Claimant's positive drug tests were entitled to be given probative value.

For these reasons, we reverse the decision of the Board.

President Judge COLINS dissents.

## ORDER

AND NOW, this 7th day of June, 2004, the adjudication of the Unemployment

**31.** It states in relevant part:

> At a prehearing or other conferences which may be held to expedite the orderly conduct and disposition of a hearing, there may be considered, in addition to offers of settlement or proposals of adjustment, the possibility of the following:
> * * *
> (2) The exchange and acceptance of service of exhibits proposed to be offered in evidence.
> (3) The obtaining of admission as to, or stipulations of, facts not remaining in dispute, or the authenticity of documents which might properly shorten the hearing.
>
> 1 Pa.Code § 35.112.

**32.** It states in relevant part:

> If a party attending a conference convened under these rules refuses to admit or stipulate the genuineness of a document or the truth of a matter of fact and if the partici-

pant requesting the admissions or stipulations thereafter proves the genuineness of the document or the truth of the matter of fact, he may apply to the agency head or presiding officer for an order requiring the other party to pay him the reasonable expenses incurred in making such proof, including reasonable attorney's fees. Unless the agency head or presiding officer finds that there were good reasons for the refusal to admit or stipulate or that the admission of stipulations sought were of no substantial importance, the order shall be made.

1 Pa.Code § 35.116.

**33.** There are many grounds for challenging the admissibility of a lab report or study and its value. The accuracy of a lab report may be challenged on grounds that the test done was unscientific, outdated and otherwise unreliable. There is a difference, for example, between a drug test performed by a high school chemistry class and a drug test done by a federally certified lab.

 

Compensation Board of Review, dated May 28, 2003, is hereby reversed.