The Pittsburgh Water and Sewer　　　:
Authority,　　　　　　　　　　　　　:
　　　　　　　　Petitioner　　　　　　:
　　　　　　　　　　　　　　　　　　　:
　　　　　v.　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　:
Unemployment Compensation　　　　　:
Board of Review,　　　　　　　　　　:　　No. 228 C.D. 2020
　　　　　　　　Respondent　　　　　　:　　Argued:  October 14, 2020


BEFORE:　　HONORABLE MARY HANNAH LEAVITT, President Judge
　　　　　　HONORABLE RENÉE COHN JUBELIRER, Judge
　　　　　　HONORABLE PATRICIA A. McCULLOUGH, Judge
　　　　　　HONORABLE ANNE E. COVEY, Judge
　　　　　　HONORABLE MICHAEL H. WOJCIK, Judge
　　　　　　HONORABLE CHRISTINE FIZZANO CANNON, Judge
　　　　　　HONORABLE ELLEN CEISLER, Judge


OPINION BY
JUDGE COVEY　　　　　　　　　　　　　　FILED:  November 18, 2020


　　　　　The Pittsburgh Water and Sewer Authority (Employer) petitions this Court for review of the Unemployment Compensation (UC) Board of Review's (UCBR) January 31, 2020 order reversing the Referee's decision and granting Terrence G. Suber (Claimant) UC benefits.  The sole issue before this Court is whether the UCBR erred by determining that Claimant is not disqualified for UC benefits under Section 402(e.1) of the UC Law (Law).[1]

　　　　　Employer employed Claimant as a customer service representative from March 4, 2019, until July 3, 2019.  Employer maintains a Drug and Alcohol Free

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, added by Section 3 of the Act of December 9, 2002, P.L. 1330, 43 P.S. § 802(e.1) (relating to discharge for "failure to submit and/or pass a drug test conducted pursuant to an employer's established substance abuse policy[]").

Workplace Policy (Drug Policy). The Drug Policy prohibits employees from using, possessing, transferring, or being under the influence of any controlled substance, drug or other intoxicant. The Drug Policy further prohibits the use of illegal drugs on or off duty. The Drug Policy defines "illegal drugs" as "any controlled substance (including the presence of their metabolites) of which the sale, possession or use is prohibited under state or federal law. Illegal drugs specifically include, among others, marijuana, cocaine, and opiates." Reproduced Record (R.R.) at 172a. In addition, the Drug Policy provides that Employer may subject employees to random drug screenings.

During Claimant's new employee orientation, Employer's human resources (HR) assistant explained Employer's drug testing protocol. She informed the new employees that if an employee was selected for a drug screening and the medical review officer (MRO) contacted the employee to inquire about medical prescriptions that may affect the drug test results, the employee would have three days to verify his/her prescriptions. If the employee did so, the test results would not be released to Employer.

On May 24, 2019, a medical professional prescribed medical marijuana to Claimant. On June 10, 2019, Claimant received a medical marijuana patient identification card. Pursuant to the Drug Policy, on June 25, 2019, Employer selected Claimant for a random drug screening. Claimant tested positive for marijuana. On June 28, 2019, Claimant submitted a copy of his medical marijuana patient identification card to the MRO who administered his drug screening. The MRO, nevertheless, forwarded the drug test results to Employer. On July 3, 2019, Employer's director and two HR representatives met with Claimant regarding his positive drug test. Despite that Claimant presented his medical marijuana patient identification card, Employer discharged him because marijuana is classified as an illegal substance under federal law.

Claimant applied for UC benefits. The Scranton UC Service Center determined that Claimant was ineligible for UC benefits under Section 402(e.1) of the Law. Claimant appealed and a Referee held a hearing. On September 3, 2019, the Referee affirmed the UC Service Center's determination. Claimant appealed to the UCBR, which reversed the Referee's decision. Employer appealed to this Court.[2] On March 12, 2020, Claimant intervened in this matter.

Employer argues that the UCBR erred as a matter of law by requiring Employer to satisfy an additional burden of proving that Claimant knowingly or intentionally violated its established Drug Policy. Specifically, Employer contends that the burden of proof under Section 402(e.1) of the Law requires only that Employer demonstrate the existence of an established substance abuse policy and that Claimant violated the policy. Thus, Employer declares that Section 402(e.1) of the Law does not require, as the UCBR mandated, proof that Claimant knowingly or intentionally violated the Drug Policy.

The UCBR rejoins that Employer, rightfully, has a policy prohibiting employee use of illegal substances. However, the UCBR maintains that Claimant was unaware that Employer would discharge him for using lawfully prescribed medical marijuana. Accordingly, the UCBR asserts that, while this Court has not explicitly held that knowledge or intent to violate an employer's substance abuse policy is required within the employer's burden of proof under the drug testing provision of the Law, such a requirement is obvious and not burdensome.

_____

[2] "'Our scope of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether the findings of fact were unsupported by substantial evidence.' *Miller v. Unemployment Comp. Bd. of Review*, 83 A.3d 484, 486 n.2 (Pa. Cmwlth. 2014)." *Talty v. Unemployment Comp. Bd. of Review*, 197 A.3d 842, 843 n.4 (Pa. Cmwlth. 2018).

3

The UCBR further avows that Employer fully admitted that it excuses positive drug test results when employees furnish the MRO a prescription. Therefore, it argues, Employer failed to adhere to its Drug Policy when it discharged Claimant after he presented his medical marijuana patient identification card. The UCBR further contends that Employer offered no clear explanation as to why it did not excuse Claimant's positive test result for prescribed medical marijuana as the HR assistant explained at the employee orientation, other than Employer followed federal law. The UCBR insists that federal law has no relevance or connection to Claimant's job, and disqualifying Claimant from UC benefits when Claimant acted pursuant to a lawful prescription would lead to an absurd result here.

Section 402(e.1) of the Law provides that an employee shall be ineligible for UC benefits for any week

> [i]n which his unemployment is due to discharge . . . due to failure to submit and/or pass a drug test conducted pursuant to an employer's established substance abuse policy, provided that the drug test is not requested or implemented in violation of the law or of a collective bargaining agreement [(CBA)].

43 P.S. § 802(e.1).

> To render an employee ineligible for UC benefits under Section 402(e.1) of the Law, **an employer is required to demonstrate** (1) **that it had an established substance abuse policy and** (2) **that the claimant violated the policy**. *UGI Utils., Inc. v. Unemployment Comp. Bd. of Review*, 851 A.2d 240, 252 (Pa. Cmwlth. 2004) [ ]. If an employer meets its initial burden, a claimant will be rendered ineligible for benefits unless the claimant is able to demonstrate that the employer's substance abuse policy is in violation of the law or a CBA. *Id.* ('The terms of [the employer's substance abuse] policy may be trumped by statute or [CBA], but it is the claimant's burden to develop the record appropriately to succeed in that defense.'). *Greer v. Unemployment Comp. Bd. of Review*, 4 A.3d 733, 736 (Pa. Cmwlth. 2010) (footnote omitted).

*Bowers v. Unemployment Comp. Bd. of Review*, 165 A.3d 49, 52-53 (Pa. Cmwlth. 2017) (emphasis added).

The UCBR determined Claimant was not disqualified for UC benefits under Section 402(e.1) of the Law, opining:

> [C]laimant credibly testified that he is prescribed medical marijuana. The [UCBR] notes that medical marijuana is legal under Pennsylvania law. Likewise, the [UCBR] recognizes that there is a current conflict with respect to the legality of [medical] marijuana under Pennsylvania and [f]ederal law, and that the employer's [Drug P]olicy appears to prohibit 'marijuana' as defined under [f]ederal law. But [] [C]laimant credibly testified that he was advised by [] [E]mployer in orientation that he would not be discharged if he provided a valid prescription to the MRO after his drug testing. [] [C]laimant did so, but [] [E]mployer opted to proceed with his discharge. While [] [E]mployer's witness credibly testified that medical marijuana was not discussed in orientation, it is incumbent upon [] [E]mployer to remedy such ambiguity and to clarify the dictates of its [Drug P]olicy, especially given the conflict between [f]ederal and [s]tate law. Moreover, [E]mployer's witness acknowledged that she was aware of Pennsylvania's Medical Marijuana [Act].[3]
>
> [] [C]laimant's use of medical marijuana was legal under Pennsylvania law, and he complied with [] [E]mployer's directive to forward the valid medical prescription after his drug test. Considering these circumstances, the [UCBR] does not find that [] [E]mployer satisfied its burden of proof to show that [C]laimant knowingly or intentionally violated its established substance abuse policy. Therefore, [] [C]laimant cannot be ineligible [for UC benefits] under Section 402(e.1) of the [] Law.

UCBR Dec. at 3.

---

[3] Act of April 17, 2016, P.L. 84, 35 P.S. §§ 10231.101-10231.2110.

Importantly,

> it is to be remembered that the . . . Law is a remedial statute, and, excepting the sections imposing taxes, its provisions must be liberally and broadly construed so that its objectives (insuring that employees who become unemployed through no fault of their own are provided with some semblance of economic security) may be completely achieved.

*A Special Touch v. Dep't of Labor & Indus.*, 228 A.3d 489, 503 (Pa. 2020) (quoting *Wedner v. Unemployment Comp. Bd. of Review*, 296 A.2d 792, 796 (Pa. 1972)).

In the instant case, Employer's Drug Policy expressly states:

> [**I**]**ndividuals may use** legal over-the-counter medications or **prescription drugs while at work strictly in accordance with** the product instructions or **a physician's prescription** provided, however, that the use of such substances does not adversely affect the individual's ability to perform his or her job, or to do so in a safe manner.

R.R. at 170a (emphasis added). Further, the Drug Policy defines "**legal drug**" as "**prescription medications** and over-the-counter medications **that have been legally obtained and are being used only in the manner, combination or quantity for which they were prescribed** or manufactured." R.R. at 173a (emphasis added). Moreover, Employer explained in its Drug Policy:

> We recognize that employees may need to use legal drugs from time to time for medical reasons. The possession or **use of legal drugs while on** [**Employer's**] **premises, during work hours and/or when performing any** [**Employer**] **business**, including when driving vehicles, **is permitted**, provided such use or influence does not affect the safety of the employee, co-workers, customers or the public, an employee's job-performance or the safe or efficient operation of [Employer] facilities, equipment and vehicles.

R.R. at 174a (emphasis added).

6

In addition, Section E of the Drug Policy provides, in relevant part:

**Medical Review Officer Procedure**

**All individuals whose test results are confirmed to be positive** . . . will be so notified by the [MRO]. Upon receiving notice of the test result, the individual **will be given the opportunity to explain to the MRO any medical reasons that would account for the laboratory findings**.

If the individual chooses to take advantage of this option, he/she must do so within 72 hours of receiving notice from the MRO of the confirmed positive test result. **The MRO will consider the individual's explanation and, if the individual's explanation is acceptable to the MRO, the positive test result will be reported as a verified negative**. If an adulterated, substituted or invalid result is determined to be caused by medication or a medic I condition, the MRO will cancel the test. If the MRO determines that the individual's explanation is not satisfactory, the test result will be reported as a verified positive or a refusal to test.

R.R. at 183a (text emphasis added). The above provision was explained to Claimant at his new employee orientation. Specifically, the UCBR found as a fact:

The HR assistant explained the drug testing protocol in [] [C]laimant's orientation. She informed the new employees that if an employee is selected for a drug screening and the [MRO] reaches out to them [sic] to inquire about medical prescriptions that may affect the results, the employee will have three days after this follow-up to verify their [sic] prescriptions. If they [sic] do so, the test result will not be released to [] [E]mployer.

UCBR Dec. at 1-2, Finding of Fact 5. Employer did not challenge this finding of fact.

Given the language of Employer's Drug Policy and Employer's HR assistant's explanation thereof, this Court concludes that the Drug Policy is ambiguous regarding the use of prescription drugs.

As with contracts, we construe any ambiguity in the [Drug Policy] against [Employer] as drafter of the document. *See generally Sun Co., Inc. v. [Pa.] Turnpike Comm'n,* 708 A.2d

7

875, 878-79 (Pa. Cmwlth. 1998) ('Ambiguous language in a contract is construed against the drafter and in favor of the other party if the latter's interpretation is reasonable.').

*Jay Twp. Auth. v. Cummins*, 773 A.2d 828, 832 n.3 (Pa. Cmwlth. 2001).

"[T]he statutory language clearly provides that to be ineligible for UC benefits under Section 402(e.1) of the Law, the drug test **must be in accordance with employer's substance abuse policy**." *Katera's Kove, Inc. v. Unemployment Comp. Bd. of Review*, 130 A.3d 800, 804 (Pa. Cmwlth. 2015) (emphasis added). Here, Employer's Drug Policy expressly permits "individuals [to] use . . . prescription drugs while at work strictly in accordance with . . . a physician's prescription[.]" R.R. at 170a. Further, the Drug Policy defines "legal drug" as "prescription medications . . . that have been legally obtained[,]" R.R. at 173a, and explicitly states that "[t]he possession or use of legal drugs while on [Employer's] premises, during work hours and/or when performing any [Employer] business . . . is permitted[.]" R.R. at 174a.

Moreover, Employer's Drug Policy provides that "[a]ll individuals whose test results are confirmed to be positive . . . will be given the opportunity to explain to the MRO any medical reasons that would account for the laboratory findings." R.R. 183a. "The MRO will consider the individual's explanation and, if the individual's explanation is acceptable to the MRO, **the positive test result will be reported as a verified negative**." *Id*. (emphasis added). The HR assistant reiterated this aspect of Employer's Drug Policy at Claimant's new employee orientation.

Consequently, because Claimant provided the MRO with his valid patient identification card to explain his use of prescribed medical marijuana, this Court cannot conclude that the MRO's reporting of Claimant's drug test as positive was "in accordance with employer's substance abuse policy." *Katera's Kove, Inc.*, 130 A.3d

at 804.[4]  Accordingly, given the remedial nature of the Law to protect "employees who become unemployed through no fault of their own," *A Special Touch*, 228 A.3d at 503 (quoting *Wedner*, 296 A.2d at 796), this Court holds that the UCBR did not err by granting Claimant UC benefits.

For all of the above reasons, the UCBR's order is affirmed.

_____
ANNE E. COVEY, Judge

---

[4] Given the Court's disposition of the case based on the language of Employer's Drug Policy, it does not reach the issue of whether the UCBR erred by requiring Employer to satisfy an additional burden of proving that Claimant *knowingly or intentionally* violated Employer's Drug Policy.

9

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

The Pittsburgh Water and Sewer
Authority,
                Petitioner

        v.

Unemployment Compensation
Board of Review,
                Respondent

:
:
:
:
:
:
:
:
:
:
:
:

No. 228 C.D. 2020

## O R D E R

AND NOW, this 18th day of November, 2020, the Unemployment Compensation Board of Review's January 31, 2020 order is affirmed.

 

_____
ANNE E. COVEY, Judge