J-S08040-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
:                  PENNSYLVANIA
:
v.                                              :
:
:
:
JASON A. GABERSECK,                  :
:
Appellant                :              No. 1412 WDA 2019

Appeal from the Judgment of Sentence Entered August 8, 2019
in the Court of Common Pleas of McKean County
Criminal Division at No(s):  CP-42-CR-0000108-2018

BEFORE:  OLSON, J., McCAFFERY, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.:                    **FILED MARCH 27, 2020**

Jason A. Gaberseck ("Gaberseck") appeals from the judgment of sentence imposed following his convictions of four counts of driving under the influence of alcohol or controlled substance ("DUI").[1]  We affirm.

On December 30, 2017, at approximately 3:00 a.m., Pennsylvania State Trooper Timothy Mix ("Trooper Mix") observed a green Geo Tracker pull into a parking lot shared by a Fox's Pizza and a Dandy Minute Mart.  Both businesses were closed.  Trooper Mix, accompanied by Pennsylvania State Trooper Rooke ("Trooper Rooke"), performed a U-turn and pulled in behind the Geo Tracker.  Trooper Mix, without activating the overhead lights or siren, stopped his marked police cruiser behind the Geo Tracker.  Trooper Mix exited his cruiser and approached the Geo Tracker.  As Trooper Mix approached, Gaberseck, the sole occupant and driver of the vehicle, lowered his window.

---

[1] **See** 75 Pa.C.S.A. §§ 3802(a)(1), (c), (d)(1)(i), (d)(3).

Trooper Mix asked if Gaberseck was okay.  As Gaberseck responded, Trooper Mix smelled alcohol on Gaberseck's breath and inside of the vehicle.  Trooper Mix asked Gaberseck to exit the vehicle and to perform field sobriety tests, which Gaberseck failed.

Trooper Mix placed Gaberseck under arrest for suspicion of DUI, and transported him to Bradford Regional Medical Center ("BRMC") for a chemical test of his blood alcohol content ("BAC").  At BRMC, Trooper Mix read Gaberseck the warnings contained on the Pennsylvania Department of Transportation DL-26b form ("DL-26b"),[2] in accordance with the mandate of 75 Pa.C.S.A. § 1547 (concerning blood or breath testing to determine amount of alcohol/controlled substance, and the consequences for refusal to submit to a test).  After Trooper Mix read Gaberseck the DL-26b, both he and Gaberseck signed the form, and Gaberseck submitted to the blood test. Gaberseck's blood was transported to National Medical Services Laboratories ("NMS Labs"), where a subsequent chemical analysis of Gaberseck's blood sample revealed that he had a BAC of 0.175%.  The toxicology report also

---

[2] The DL-26b that Trooper Mix read to Gaberseck was the new version, which had been revised in response to the decision of the United States Supreme Court in **Birchfield v. North Dakota**, 135 S. Ct. 2160 (2016).  In **Birchfield**, the Supreme Court concluded that blood tests taken pursuant to implied consent laws are an unconstitutional invasion of privacy.  **Id.** at 2186.  The Supreme Court stated that "motorists cannot be deemed to have consented to submit to a blood test on pain of committing a criminal offense." **Id.**

indicated the presence of the inactive metabolite of marijuana, delta 9 carboxy THC, as well as the psychoactive component of marijuana, delta 9 THC.

The Commonwealth charged Gaberseck with four counts of DUI, and one count each of notice of change of name or address, careless driving, and possession of drug paraphernalia.[3]  Gaberseck filed a pre-trial Motion to suppress, alleging that Trooper Mix had conducted an unlawful investigative detention of Gaberseck.  Following a suppression hearing, the trial court entered an Order denying the Motion to suppress.

The matter proceeded to a non-jury trial on June 21, 2019.  When the Commonwealth sought to admit the blood test result, Gaberseck's counsel objected several times, asserting that the chain of custody concerning the BAC evidence was deficient.  The trial court overruled the objections and admitted the blood test result.  Ultimately, the trial court found Gaberseck guilty of four counts of DUI, and not guilty of the remaining charges.

On August 15, 2019, the trial court sentenced Gaberseck to 5 years of intermediate punishment, with the first 3 days to be served in the McKean County Jail, the next 87 days in restorative sanctions/house arrest, followed by the remaining time to be served on probation, plus fines and costs. Gaberseck timely filed a Notice of Appeal and a court-ordered 1925(b) Concise Statement of Errors Complained of on Appeal.  The trial court issued a Rule 1925(a) Opinion.

---

[3] **See** 75 Pa.C.S.A. §§ 3802(a)(1), 3802(c), 3802(d)(1)(i), 3802(d)(3), 1515(a), 3714(a); 35 Pa.C.S.A. § 780-113(a)(32).

Gaberseck now presents the following issues for our review:

(1) Whether the trial [c]ourt erred in denying a [M]otion to suppress evidence in[] finding that [Gaberseck]'s interaction with police was the result of a mere encounter requiring no level of suspicion or probable cause?

(2) Whether the trial [c]ourt erred in ruling that the [NMS Labs] report was admissible at the non-jury trial[], based on evidence presented at the time of trial?

Brief for Appellant at 4.

In his first issue, Gaberseck argues that the trial court erred in denying his Motion to suppress, where the trial court determined that Gaberseck had been subject to a mere encounter. *Id.* at 15. Gaberseck contends that a reasonable person in his situation would not have felt free to leave under the circumstances. *Id.* at 15, 20-21. Specifically, Gaberseck claims that his interaction with Trooper Mix was actually an investigative detention, because Trooper Mix pulled his cruiser behind Gaberseck's car in the parking lot, exited his vehicle, and approached Gaberseck's car. *Id.* at 20. Gaberseck further contends that Trooper Mix had no reason to approach Gaberseck because he had not observed any traffic violations or any signs of distress from Gaberseck or his vehicle. *Id.* at 20-21.

We adhere to the following standard of review:

We may consider only the Commonwealth's evidence and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the factual findings of the trial court, we are bound by those facts and may reverse only if the legal conclusions drawn

- 4 -

therefrom are in error. An appellate court, of course, is not bound by the suppression court's conclusions of law.

***Commonwealth v. Hampton***, 204 A.3d 452, 456 (Pa. Super. 2019).

"The Fourth Amendment of the Federal Constitution and Article I, Section 8 of the Pennsylvania Constitution protect individuals from unreasonable searches and seizures." ***Commonwealth v. Walls***, 53 A.3d 889, 892 (Pa. Super. 2012). There are three categories of interactions between police and a citizen:

> The first of these is a "mere encounter" (or request for information) which need not be supported by any level of suspicion, but carries no official compulsion to stop or to respond. The second, an "investigative detention[,]" must be supported by a reasonable suspicion; it subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of an arrest. Finally, an arrest or "custodial detention" must be supported by probable cause.

***Commonwealth v. Downey***, 39 A.3d 401, 405 (Pa. Super. 2012) (citation omitted). When determining whether an individual is subject to a mere encounter or an investigative detention, "[t]he pivotal inquiry is whether, in light of the facts and circumstances, a reasonable man, innocent of any crime, would have thought he was being restrained had he been in the defendant's shoes." ***Hampton***, 204 A.3d at 458.

Instantly, the trial court, in its Opinion, found that Gaberseck was subject to a mere encounter:

> [Gaberseck] voluntarily pulled his vehicle over and parked in a public area. The lights and siren[] on Trooper Mix's patrol vehicle were not activated. The patrol vehicle was parked behind [Gaberseck]'s vehicle and, therefore, [Gaberseck's vehicle] was

not blocked in. Trooper Mix did not draw his service weapon or threaten [Gaberseck]. Therefore, [Trooper Mix's] interaction with [Gaberseck] was a mere encounter.

Trial Court Opinion, 10/14/19, at 8.

Our review of the record shows, here, Trooper Mix, the sole witness at the suppression hearing, testified that Gaberseck pulled off the roadway into a public parking lot of two closed businesses. N.T., 8/8/18, at 6, 13. Trooper Mix drove past the parking lot, performed a U-turn, and returned to see Gaberseck's vehicle still parked in the parking lot. *Id.* at 14-15. Trooper Mix then pulled his cruiser in behind Gaberseck's vehicle. *Id.* at 6, 14-15. At no point did Trooper Mix activate his lights or siren. *Id.* at 7. Moreover, Trooper Mix did not position his cruiser in a way that would block Gaberseck's only avenue of exit, and Gaberseck was capable of leaving the area. *Id.* at 7, 11. Additionally, Trooper Mix approached Gaberseck's vehicle alone, and did not issue any commands to Gaberseck. *Id.* at 6-8, 11. In fact, Gaberseck lowered his window to engage with Trooper Mix of his own volition. *Id.* at 7. As Trooper Mix and Gaberseck began conversing, Trooper Mix could smell a strong odor of alcohol on Gaberseck's breath.[4] *Id.*

---

[4] At the suppression hearing, Gaberseck's counsel stated, "we stipulate [Trooper Mix] had reason to take [Gaberseck] for blood. Our issue is challenging the initial interaction with the vehicle after [Trooper Mix] talked to [Gaberseck]. We didn't challenge anything after that point. … I will stipulate from the point [Gaberseck] rolled down his window, [Trooper Mix] had clear reason to continue the detention." *Id.* at 8-9.

In **Hampton**, the defendant drove his vehicle into the field of a privately owned church. **Id.** The police pulled in behind him, "effectively blocking his exit as his vehicle was facing a building, and he could not travel forward." **Id.** In ruling that a reasonable person in the defendant's shoes would not have felt free to leave, this Court focused on the restriction of the defendant's freedom of movement "by means of physical force" by the police. **Id.** Specifically, this Court concluded that the defendant was subject to an investigative detention when the officer parked behind defendant's vehicle in a way that completely blocked defendant's only means of leaving the area. **Id.**

Additionally, our Supreme Court has found that an individual was "seized" when an officer prevented the individual from exiting his vehicle by closing the door when the individual opened it. **Commonwealth v. Adams**, 205 A.3d 1195, 1200 (Pa. 2019). In **Adams**, our Supreme Court stated that an "act of physical force and a show of authority is precisely the type of escalatory factor" that shows a seizure had occurred. **Id.** at 1200-01. This type of police action is clearly distinguishable from a request. **See, Commonwealth v. Au**, 42 A.3d 1002, 1007 n.3 (Pa. 2012) (stating that when considering whether an individual has been "seized," a "request obviously differs from a demand").

Given the totality of the circumstances, we conclude that Trooper Mix's interaction with Gaberseck was a mere encounter, and did not require

reasonable suspicion. ***See Hampton, supra; see also Au, supra***. Accordingly, the trial court did not err in denying Gaberseck's Motion to suppress.

In his second issue, Gaberseck contends that the trial court erred by overruling his objections to the admission of the BAC results, and that the trial court admitted the BAC results in violation of Gaberseck's right to confrontation.[5] ***See*** Brief for Appellant at 21, 24. Gaberseck challenges the chain of custody concerning the BAC results, where the phlebotomist, Angela Fox ("Fox"), who drew his blood, had no memory of him, just a vague memory of "[]drawing a DUI[] with Trooper Mix present." ***Id.*** at 21, 22. Gaberseck also claims that there was a lack of testimony explaining how NMS Labs received the blood sample. ***Id.*** at 23. Specifically, Gaberseck contends that Fox put two sets of initials on the form, but the forensic toxicologist at NMS Labs, Jolene Bierly ("Bierly"), was unable to identify whose initials were on the sample that was tested. ***Id.*** Gaberseck further argues that the Commonwealth failed to present any photographs or other documentation

---

[5] To the extent Gaberseck raises a challenge under the Confrontation Clause, we observe that Gaberseck failed to raise such a claim in his Concise Statement. ***See*** Pa.R.A.P. 1925(b)(4)(vii) (providing that "[i]ssues not included in the [Concise] Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived.). Even if Gaberseck had properly preserved this claim, we would conclude that Gaberseck is not entitled to relief for the reasons set forth by the trial court. ***See*** Trial Court Opinion, 10/14/19, at 10-13.

that could "even circumstantially conclude that the sample provided by [Gaberseck] was the one tested by NMS [Labs]." ***Id.***

Initially, we observe that Gaberseck conflates several distinct issues in the argument section of his brief, none of which is adequately developed for review. Pa.R.A.P. 2119(a) (providing that "[t]he argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part--in distinctive type or in type distinctively displayed--the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent); ***see also Commonwealth v. Samuel***, 102 A.3d 1001, 1005 (Pa. Super. 2014) (concluding that appellant waived his claim by failing to adequately develop his argument or provide citation to and discussion of relevant authority). Nevertheless, we briefly address Gaberseck's primary claim that the Commonwealth failed to establish appropriate chain of custody of the disputed evidence. ***See*** Brief for Appellant at 21.

When considering the admissibility of evidence, we adhere to the following standard:

> The admissibility of evidence is a matter for the discretion of the trial court and a ruling thereon will be reversed on appeal only upon a showing that the trial court committed an abuse of discretion. An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous.

***Commonwealth v. Johnson***, 42 A.3d 1017, 1027 (Pa. 2012) (citations and

quotation marks omitted).

We review a challenge concerning a chain of custody under the following

standard:

> While the Commonwealth bears the burden of demonstrating some reasonable connection between the prof[f]ered exhibits and the true evidence, it need not establish the sanctity of its exhibits beyond a moral certainty. The Commonwealth need not produce every individual who came into contact with an item of evidence, nor must it eliminate every hypothetical possibility of tampering. A complete chain of custody is not required so long as the Commonwealth's evidence, direct and circumstantial, establishes a reasonable inference that the identity and condition of the exhibits have remained the same from the time they were first received until the time of trial. Any gaps in testimony regarding the chain of custody go to the weight to be given the testimony, not to its admissibility.

***Commonwealth v. Cugaini***, 452 A.2d 1064, 1065 (Pa. Super. 1982)

(citations omitted).

Gaberseck's allegation goes to the weight to be afforded to the evidence.

***See Commonwealth v. Bolden***, 406 A.2d 333, 335-36 (Pa. 1979) (stating

that gaps in testimony regarding the chain of custody go to the weight to be

given the testimony, not to its admissibility). The evidence presented here,

direct and circumstantial, sufficiently established a reasonable inference that

the identity and condition of the exhibit remained unimpaired.[6]

Instantly, Trooper Mix testified that he brought Gaberseck to BRMC for a blood draw. Notes of Testimony, 6/21/19, at 89. Trooper Mix and Gaberseck both signed the DL-26b, whereby Gaberseck consented to the blood draw. *Id.* Trooper Mix saw Fox draw Gaberseck's blood. *Id.* Trooper Mix then saw Fox label and seal the tubes of blood, before placing the tubes into the box, and then sealing that box. *Id.*

Fox testified that once the blood is drawn in the vials, the vials are sealed and placed in a box to be sent to NMS Labs, which is also sealed. *Id.* at 15. The box is then placed in a refrigerator until it is sent to NMS Labs. *Id.* Fox testified that these procedures were followed in the instant case. *Id.* at 16-17. Fox did not personally send the box to NMS Labs. *Id.*

Bierly testified about the chain of custody process NMS Labs uses when it receives evidence from an outside source. *Id.* at 26-27. Initially, the blood sample is received by NMS Labs and is inspected to ensure it "[is] in the appropriate condition[]" before it is opened and logged into the computer system. *Id.* The blood sample is given a unique work order number, which is printed out on barcodes, and is used to create the internal chain of custody.

---

[6] ***See Commonwealth v. Feliciano***, 67 A.3d 19 (Pa. Super. 2013). There is no rule requiring that the prosecution produce as witnesses all persons who are in a position to come into contact with the article sought to be introduced into evidence. ***Cugaini, supra***.

*Id.* Those barcodes are then placed on "the documentation, the evidence kit, the blood tubes, everything" and those barcodes are scanned every time the evidence is moved throughout NMS Labs. *Id.* The blood sample is then stored in a "limited-access refrigerator until testing begins." *Id.* Bierly further testified that she cross-references every work order number, subject name, agency case number, and submitting agency between every item and document she receives. *Id.* at 32. Bierly testified that NMS Labs received Gaberseck's blood on January 3, 2018, and her subordinates logged the name "Jason Gaberseck" on the submission documentation in the report. *Id.* at 29, 32.

We conclude that the chain of custody presented by the Commonwealth was more than sufficient. Here, the Commonwealth presented the testimony of Fox, who testified as to the procedures of BRMC. Both Fox and Trooper Mix testified that those procedures were followed. Bierly testified about the chain of custody procedures at NMS Labs and personally verified that each step was followed. Gaberseck fails to show any indication that the tested blood is not the blood that Fox drew and Bierly analyzed. Accordingly, Gaberseck is not entitled to relief on this claim.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  3/27/2020