# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Kalvin Hauck,  :
               Petitioner  :
   :
         v.  :
   :
Unemployment Compensation  :
Board of Review,  :   No. 1351 C.D. 2020
               Respondent  :   Submitted: October 29, 2021


BEFORE:   HONORABLE RENÉE COHN JUBELIRER, Judge[1]
              HONORABLE ANNE E. COVEY, Judge
              HONORABLE CHRISTINE FIZZANO CANNON, Judge


OPINION BY
JUDGE COVEY                    FILED: February 23, 2022


        Kalvin Hauck (Claimant) petitions this Court for review of the Unemployment Compensation (UC) Board of Review's (UCBR) October 30, 2020 order affirming the Referee's decision that denied UC benefits under Section 402(e.1) of the UC Law (Law).[2] Claimant presents three issues for this Court's review: (1) whether the UCBR erred by concluding that Claimant violated Shop Vac Corporation's (Employer) Drug and Alcohol Free Workplace Policy (Drug Policy) where Claimant made timely hearsay objections; (2) whether the UCBR's factual findings were supported by substantial, credible, and admissible evidence; and (3)

---

[1] This case was assigned to the opinion writer before January 7, 2022, when Judge Cohn Jubelirer became President Judge.

[2] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, added by Section 3 of the Act of December 9, 2002, P.L. 1330, 43 P.S. § 802(e.1) (relating to discharge for "failure to submit and/or pass a drug test conducted pursuant to an employer's established substance abuse policy[]").

whether the denial of benefits was based on erroneously admitted evidence. After review, this Court affirms.

Employer hired Claimant as a full-time custodian on July 21, 2003. Employer's Drug Policy allows for drug testing under numerous circumstances, including reasonable suspicion or for-cause testing, return-to-duty and follow-up testing, and random employee testing. *See* Certified Record (C.R.) at 23-30. On August 3, 2006, Claimant acknowledged receipt of the Drug Policy. *See* C.R. at 71. On July 8, 2019, Employer directed Claimant to take a drug test. Claimant failed the drug test. On July 13, 2019, Employer discharged Claimant for violating the Drug Policy.

Claimant applied for UC benefits. On August 16, 2019, the Altoona UC Service Center determined that Claimant was ineligible for benefits under Section 402(e.1) of the Law. Claimant appealed, and a Referee held a hearing on September 18, 2019. Claimant did not appear at the hearing; however, his counsel attended. Employer's Director of Human Resources and Payroll Allison Leta (Leta) attended the hearing and testified on Employer's behalf.

At the hearing, Claimant's counsel objected to two Employer exhibits: (1) Exhibit 6 - MidState Occupational Health Services' drug test lab results (Lab Report), and (2) Exhibit 13 - the UC Service Center's Employer Questionnaire (Employer Questionnaire). After the Referee identified the proposed exhibits, the following exchange occurred among the Referee, Claimant's counsel, and Leta:

> [Claimant's lawyer:] **I would object to Exhibit #6 on the basis of hearsay** and also Exhibit #13 to the extent it's being offered for the truth of the information. I'm not sure who prepared the document. It says Employer Questionnaire, but I'm not sure who prepared it. So I'm objecting to that also, based on a hearsay objection.
>
> R[eferee:] Thank you. [Exhibit] #6 is the [Lab Report]. [] Leta, how does [Employer] get this document?

2

[Leta:] That document is emailed to [Employer's Human Resources Department (Human Resources)].

R[eferee:] And is it emailed to you or is it emailed to someone else from [H]uman [R]esources?

[Leta:] It's emailed to two people in [H]uman -- our safety manager and another person in [H]uman [R]esources.

R[eferee:] So it's not you?

[Leta:] It was not me at the time. I do receive them now, but at that particular time, it was emailed to [the Human Resources] [a]ssistant [m]anager and our [s]afety [m]anager.

R[eferee:] So are you the custodian of this record?

[Leta:] You mean the person who received it first?

R[eferee:] The person who is in charge of keeping the document?

[Leta:] It is kept in the [Human Resources] office in a locked filing cabinet.

R[eferee:] I'm going to overrule the objection. I'll allow it in and I'll give it its own weight regarding today's hearing. [Exhibit] #13 is an Employer Questionnaire. It does not have a name of the person who completed it. [] Leta, do you know, are you the person who completed the Employer Questionnaire for [] Employer?

[Leta:] I believe I handled all of the questionnaires. I can look at the handwriting.

R[eferee:] Is that your handwriting on the document?

[Leta:] Yes, that is my handwriting.

R[eferee:] The objection to [Exhibit] #13 is overruled. . . . [Exhibits] 6 and 13 will be allowed into the record.

C.R. at 66-67 (emphasis added).

Leta later testified:

> [Claimant] was given a random drug test per [the Drug Policy]. The morning that he -- Monday morning. And [Employer] received a non-negative result at first, which means it had to be sent out for testing. . . . [W]e received the results on [July 12, 2019,] and we notified him on [July 13, 2019,] that h[is employment] was terminated due to a positive drug screen.[3]

C.R. at 68. Leta related that she was not involved in Claimant's drug testing or in requesting the drug test, *see* C.R. at 69, and she was not the individual who informed Claimant that he was discharged. *See* C.R. at 68. Leta also presented the document titled *Production Employee Orientation*, which Claimant signed, acknowledging, *inter alia*, his receipt of the Drug Policy. This was the entirety of Leta's substantive testimony regarding Claimant's discharge.

On September 19, 2019, the Referee affirmed the UC Service Center's determination denying Claimant UC benefits pursuant to Section 402(e.1) of the Law. Claimant appealed to the UCBR. On January 21, 2020, the UCBR affirmed the Referee's determination (Original Decision). In its Original Decision, the UCBR incorrectly stated that the Referee had sustained Claimant's objection to the Lab Report's admissibility. Claimant requested reconsideration, which the UCBR granted with respect to whether the UCBR properly considered the Lab Report. On October 30, 2020, the UCBR issued a new decision (October Decision), again denying Claimant UC benefits under Section 402(e.1) of the Law.

The UCBR declared:

> On appeal, [] [C]laimant also argues that the Referee erred by admitting the Employer Questionnaire (Ex. 13) over [C]laimant's objection. Although [Leta] prepared the responses on the Employer Questionnaire, [Leta] admittedly had no first-hand knowledge of the events at

---

[3] Leta stated that the Lab Report showed that Claimant tested positive for cocaine metabolite. *See* C.R. at 68.

4

issue and, as a result, the Referee should have sustained the objection to the extent that the Employer Questionnaire contained hearsay statements. Nonetheless, this ruling does not change the result.

C.R. at 170.

With respect to the Lab Report's admissibility, the UCBR explained:

[E]mployer also met its burden to prove that [C]laimant failed the drug and alcohol test. The [UCBR's] [O]riginal [D]ecision inaccurately stated that the Referee sustained [C]laimant's objection to exclude the drug test results. However, a further review of the record reveals that the Referee overruled [C]laimant's hearsay objection to the admission of the drug test results. **The Referee's acceptance of the test results into the record was proper because drug test results contained in a lab report are fact**, **not opinion**, **evidence and**, **as such**, **not hearsay**; **such medical "facts" contained in a lab report are**, **therefore**, **admissible and not hearsay**. *See UGI Util*[*s.*]*, Inc. v. U*[*nemployment*] *C*[*omp.*] *B*[*d. of*] *R*[*ev.*], 851 A.2d 240, 248 (Pa. Cmwlth. 2004).

C.R. at 169 (emphasis added; citation omitted). Claimant requested reconsideration of the October Decision, which the UCBR denied. Claimant appealed to this Court.[4]

Initially, Section 402(e.1) of the Law provides that an employee shall be ineligible for UC benefits for any week

[i]n which his unemployment is due to discharge . . . due to failure to submit and/or pass a drug test conducted pursuant to an employer's established substance abuse policy, provided that the drug test is not requested or implemented in violation of the law or of a collective bargaining agreement [(CBA)].

43 P.S. § 802(e.1).

---

[4] "'Our scope of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether the findings of fact were unsupported by substantial evidence.' *Miller v. Unemployment Comp. Bd. of Rev.*, 83 A.3d 484, 486 n.2 (Pa. Cmwlth. 2014)." *Talty v. Unemployment Comp. Bd. of Rev.*, 197 A.3d 842, 843 n.4 (Pa. Cmwlth. 2018).

To render an employee ineligible for UC benefits under Section 402(e.1) of the Law, **an employer is required to demonstrate** (1) **that it had an established substance abuse policy and** (2) **that the claimant violated the policy**. *UGI* . . . , 851 A.2d [at] 252 . . . . If an employer meets its initial burden, a claimant will be rendered ineligible for benefits unless the claimant is able to demonstrate that the employer's substance abuse policy is in violation of the law or a CBA. *Id.* (["]The terms of [the employer's substance abuse] policy may be trumped by statute or [a CBA], but it is the claimant's burden to develop the record appropriately to succeed in that defense.["]). *Greer v. Unemployment Comp. Bd. of Rev*[.], 4 A.3d 733, 736 (Pa. Cmwlth. 2010) (footnote omitted).

*Pittsburgh Water & Sewer Auth. v. Unemployment Comp. Bd. of Rev*., 242 A.3d 704, 707 (Pa. Cmwlth. 2020) (quoting *Bowers v. Unemployment Comp. Bd. of Rev*., 165 A.3d 49, 52-53 (Pa. Cmwlth. 2017) (emphasis added)).

This Court has explained:

Section 402(e.1) of the Law requires an employer to demonstrate that it had adopted a substance abuse policy that was violated by the employee in order for that employee to be rendered ineligible for benefits. . . . **Section 402(e.1)** [**of the Law**] **does not relieve an employer of laying a foundation for a drug test report**.

*UGI*, 851 A.2d at 252 (emphasis added). Drug test results must be admitted through "someone with knowledge of the testing procedure." *O'Brien v. Unemployment Comp. Bd. of Rev*., 49 A.3d 916, 919 (Pa. Cmwlth. 2012).

Claimant first argues that the UCBR erred by concluding that record evidence established that Claimant violated Employer's Drug Policy where Claimant made timely hearsay objections to the Lab Report.

In its October Decision, the UCBR affirmed the Referee's decision to admit the Lab Report into evidence based on the *UGI* Court's holding that "drug test

6

results contained in a lab report are fact, not opinion, evidence and, as such, not hearsay . . . ."[5] *UGI*, 851 A.2d at 248. The UCBR further reasoned:

> On appeal, [C]laimant argues that [E]mployer failed to establish a proper foundation for the proffered drug test results; however, because [**C**]**laimant did not raise an objection for improper foundation before the Referee**, **he may not do so for the first time before the [UCBR]**. **As a result**, **the drug test results submitted by [E]mployer are competent evidence and may support a finding of fact**. Based on the drug test results submitted by [E]mployer, the [UCBR] concludes that [C]laimant failed a random drug test administered by [E]mployer by testing positive for alcohol[6] and cocaine metabolite.

C.R. at 169 (emphasis added). However, Claimant **did** object to the Lab Report's admissibility on hearsay grounds at the time the document was being offered. Thus, the issue is not waived.

> [This Court] ha[s] consistently applied the following standard, referred to as the *Walker* Rule, to determine whether hearsay evidence is admissible at administrative proceedings:
>
> > (1) **Hearsay evidence**, [p]**roperly objected to**, **is not competent evidence to support a finding of** [**an agency**][;]
> >
> > (2) Hearsay evidence, [a]dmitted without objection, will be given its natural probative effect and may support a finding of [an agency], [i]f it is corroborated by any competent evidence in the record, but a finding of fact based [s]oley on hearsay will not stand.

---

[5] "Hearsay, defined as a declarant's out-of-court statement or assertion offered into evidence to prove the truth of the matter asserted, is generally inadmissible unless an exception applies." *Worley v. Cnty. of Del.*, 178 A.3d 213, 230 (Pa. Cmwlth. 2017).

[6] The UCBR acknowledges in its brief that its finding that Claimant tested positive for alcohol was incorrect. *See* UCBR Br. at 3 n.2.

> *Rox Coal Co. v. Workers' Comp. Appeal Bd.*
> *(Snizaski)*, . . . 807 A.2d 906, 915 ([Pa.] 2002) (citing
> *Walker v. Unemployment Comp. Bd. of Rev*[.], . . . 367
> A.2d 366, 370 ([Pa. Cmwlth.] 1976)).

*Lancaster Cnty. Child. & Youth Servs. Agency v. Dep't of Hum. Servs.*, 235 A.3d 402, 411 (Pa. Cmwlth. 2020) (emphasis added).

Pennsylvania Rule of Evidence (Rule) 802 specifically prohibits hearsay evidence absent an exception. "Where a hearsay document contains additional hearsay within it (often referred to as 'double hearsay'), each level of hearsay must satisfy an exception to the rule prohibiting the admission of hearsay evidence." *In re A.J.R.-H.*, 188 A.3d 1157, 1169 (Pa. 2018). "[T]he burden of production is on the proponent of the hearsay statement to convince the court of its admissibility under one of the exceptions." *Commonwealth v. Smith*, 681 A.2d 1288, 1290 (Pa. 1996); *see also Harris v. Toys "R" Us-Penn, Inc.*, 880 A.2d 1270, 1278 (Pa. Super. 2005) (The "proponent of the statement[] bears the burden of proof and must convince the court that the hearsay statement is admissible . . . .").

> Section 6108(b) of the [Uniform Business Records as Evidence] Act[, 42 Pa.C.S. § 6108(b) (BREA),] states:
>
>> A record of an act, condition or event shall, insofar as relevant, be competent evidence if the custodian *or other qualified witness* testifies to its identity and the mode of its preparation, and if it was made in the regular course of business at or near the time of the act, condition or event, and if, in the opinion of the tribunal, the sources of information, method and time of preparation were such as to justify its admission.
>
> 42 Pa.C.S. § 6108(b) (emphasis added). In discussing **this exception to the hearsay rule**, this [C]ourt has held:
>
>> Under this exception, it is not essential to produce either the person who made the entries or the custodian of the record at the

time the entries were made or that the witness qualifying the business records even has personal knowledge of the facts reported in the business record. **As long as the authenticating witness can provide sufficient information relating to the preparation and maintenance of the records to justify a presumption of trustworthiness of the business records of a company**, **a sufficient basis is provided to offset the hearsay character of the evidence**.

*Virgo v. Workers' Comp. Appeal Bd.* [(*Cnty. of Lehigh-Cedarbrook)*], 890 A.2d 13, 20 (Pa. Cmwlth. 2005) (citations omitted). Furthermore, in a decision discussing the admissibility of drug test results under Section 6108(b) of the [BREA], this [C]ourt held that the testimony of the supervisor of those persons who are actually performing the drug testing of a urine specimen[] is sufficient to establish the reliability and trustworthiness of the evidence under the [BREA].

*Turner v. Unemployment Comp. Bd. of Rev.*, 899 A.2d 381, 386 (Pa. Cmwlth. 2006) (bold emphasis added).

In addition, Rule 803(6) specifies that the rule against hearsay will not exclude "[r]ecords of a [r]egularly [c]onducted [a]ctivity" if:

(A) the record was made at or near the time by--or from information transmitted by--someone with knowledge;

(B) the record was kept in the course of a regularly conducted activity of a "business", which term includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit;

(C) making the record was a regular practice of that activity;

(D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) [(relating to certified domestic or foreign records of a regularly

9

conducted activity)] or with a statute permitting certification; and

(E) the opponent does not show that the source of information or other circumstances indicate a lack of trustworthiness.

Pa.R.E. 803(6).

According to the Pennsylvania Supreme Court,

[t]he business records exception has been incorporated into Pennsylvania law through the [BREA], which was originally enacted in 1939, and [Rule] 803(6), originally adopted in 1998, which generally tracks Federal Rule of Evidence 803(6) [Fed. R. Civ. P. 803(6),] . . . respectively. The [BREA] and [] Rule [803(6)] substantially overlap in that both generally **require that a custodian or other qualified witness testify that the record was made "at or near the time" of the event recorded and that the record was kept in the regular course of business**. *Id.* Moreover, **both provide for the trial court to make a determination in regard to whether the circumstances surrounding the record "justify its admission" or "indicate a lack of trustworthiness."** *Id.*

*Bayview Loan Servicing LLC v. Wicker*, 206 A.3d 474, 483 (Pa. 2019) (emphasis added; footnote omitted).

Relying, in part, on *UGI*, Claimant contends that "Pennsylvania case law firmly requires that medical reports be admitted as business records *before* the [UCBR] can consider the substantive 'medical facts.' The [UCBR] skipped this step and instead went straight to the test results *within* the Lab Report." Claimant Reply Br. at 2-3. According to Claimant,

[t]he [UCBR]'s position rests on its conclusion that "[t]he Referee properly overruled Claimant's hearsay objection to the drug test results and admitted the drug test results into the record because this Court has held that drug test results *contained in a lab report* are fact, not opinion, evidence and, as such, not hearsay." [UCBR Br.] at 5 (emphasis added). The [UCBR] does not once grapple

10

> with the hearsay nature of the [L]ab [R]eport and instead skips to the second level of hearsay.

Claimant Reply Br. at 2 n.1. This Court agrees.

The *UGI* Court held that drug test results contained in a lab report **that is admissible under the BREA** "are fact, not opinion, evidence and, as such, not hearsay by reason of [the BREA]." *UGI*, 851 A.2d at 248. Accordingly, "medical 'facts' contained in a lab report are, therefore, admissible and not hearsay." *Id*. Nonetheless, in order for test results **contained in** a lab report to be admissible, **the lab report itself must be admissible** under an exception to the hearsay rule, such as the BREA or Rule 803(6). To fall within the aforementioned exceptions to the hearsay rule, a lab report must be properly authenticated pursuant to Section 6108(b) of the BREA or in accordance with Rule 803(6).

Unlike in *UGI*, where the claimant "did not object to the admission of the lab reports on any ground[,]" here, Claimant did object to the Lab Report's admissibility on hearsay grounds at the time the document was being offered. *UGI*, 851 A.2d at 250. Contrary to the UCBR's contention, it was unnecessary for Claimant to object to the document's admission based on "foundation or authentication or chain of custody or busines[s] record exception[,]" because Claimant objected to the document as hearsay. UCBR Br. at 9. It was then **Employer**'s burden to demonstrate that the document was either not hearsay, or was admissible pursuant to an exception to the hearsay rule, such as the BREA or Rule 803(6), under which those issues are considered. *See Smith*. To show that the Lab Report was admissible under the BREA or Rule 803(6) as an exception to the hearsay rule, Employer was required to properly authenticate it in accordance therewith.

Notably, Employer, through Leta, did not directly respond to Claimant's objection to propose a particular exception to the hearsay rule. Rather,

11

the Referee asked Leta a few questions about the Lab Report, attempting to determine whether the Lab Report constituted a business record under the BREA or a record of a regularly conducted activity under Rule 803(6). In response, Leta provided the following information regarding the Lab Report: (1) she did not personally request the drug test; (2) Employer receives lab reports by email - "[t]hat document is emailed to [the Human Resources Department,]" C.R. at 66; (3) the Lab Report was emailed to an assistant manager in the Human Resources Department and Employer's safety manager, and not Leta, but now they are emailed to her; and (4) Human Resources maintains the Lab Report in a locked filing cabinet. *See* C.R. at 66-67.

This Court cannot overlook the fact that Leta did not testify regarding the testing procedure, who sent the email, whether and/or how Lab Reports are sent in the regular course of business, and whether she is currently the person who stores said Lab Reports. Accordingly, the Referee erred by overruling Claimant's hearsay objection to the Lab Report. *See UGI*.[7]

Notwithstanding, the UCBR maintains that the record evidence supports its October Decision. The UCBR argues that, in accordance with *Greer*, "[i]ntroducing drug test results into evidence is not the sole means by which an employer can demonstrate a claimant violated its substance abuse policy. Violation of an employer's substance abuse policy also can be established by a claimant's own admission that he or she violated the policy." *Id.* at 737. Claimant rejoins that

---

[7] *See also In re A.J.R.-H.* Therein, the Pennsylvania Supreme Court determined that exhibits were improperly admitted under the business record exception where the county children and youth services (CYS) "did not present any witness in support of the exhibits' admission, let alone 'the custodian or other qualified witness.' *See* 42 Pa.C.S. § 6108(b); Pa.R.E. 803(6)(D)." *In re A.J.R.-H.*, 188 A.3d at 1167-68. Further, the county solicitor provided the only information supporting the exhibits' admission in response to the orphans' court's leading question, stating "that the exhibits were contained in CYS's files and 'were collected in the ordinary course of business with regard to th[e] case.' [Notes of Testimony], 8/12/2016, at 18-19; *see* 42 Pa.C.S. § 6108(b); Pa.R.E. 803(6)(B)." *In re A.J.R.-H.*, 188 A.3d at 1168.

findings of fact numbers 4, 5, and 6 are not supported by substantial, competent, and admissible evidence.

"In determining whether a finding of fact is supported by substantial evidence, the Court is required to give the party in whose favor the decision was rendered 'the benefit of all reasonable and logical inferences that may be drawn from the evidence of record.'" *Allegheny Cnty. Off. of Child., Youth & Families v. Dep't of Hum. Servs.*, 202 A.3d 155, 164 (Pa. Cmwlth. 2019) (quoting *S.T. v. Dep't of Pub. Welfare, Lackawanna Cnty. Off., Child., Youth & Fam. Servs.*, 681 A.2d 853, 856 (Pa. Cmwlth. 1996)). "Mere speculation or conjecture is insufficient to support a factual finding, but where there exists the ability to draw reasonable and logical inferences from evidence that is presented, including testimony, a conclusion so derived will be sufficient, even if it may not be the only possible conclusion." *W. Penn Allegheny Health Sys. v. Workers' Comp. Appeal Bd. (Cochenour)*, 251 A.3d 467, 475 (Pa. Cmwlth. 2021).

Recently, this Court explained:

A claimant's "admissions [] constitute independent evidence of themselves and are therefore capable of independently providing competent evidence to support the findings of the [UCBR]." *Unemployment Comp. Bd. of Rev. v. Houp*, . . . 340 A.2d 588, 591 ([Pa. Cmwlth.] 1975). "[W]ords of a party constitute an admission and therefore may always be used against him." *Stugart v. Unemployment Comp. Bd. of Rev.*, 85 A.3d 606, 608 (Pa. Cmwlth. 2014) (quoting *Evans v. Unemployment Comp. Bd. of Rev.*, . . . 484 A.2d 822, 827 ([Pa. Cmwlth.] 1984)). **We have held that out-of-court statements by a claimant on his submissions**, such as the **"claimant questionnaire"** and the **"internet claim form,"** **constitute party admissions that are admissible as an exception to the hearsay rule**. *Havrilchak v. Unemployment Comp. Bd. of Rev.*, 133 A.3d 800, 804 n.3 (Pa. Cmwlth. 2015) (citing *Stugart*, 85 A.3d at 606); *see also Greer* . . . , 4 A.3d [at] 739 . . . . In *Greer*, we determined that the "[v]iolation of an employer's

13

substance abuse policy [] can be established by a claimant's own admission that he or she violated the policy" where the claimant admitted such in his questionnaire. [*Id*.] at 737. In summary, **an employer's burden under Section 402(e.1) [of the Law] - to establish** the existence of an established drug policy and **that the claimant** either refused to submit or **failed a required drug test - may be met solely by a claimant's admissions**, **whether those admissions occur in submissions to the [UCBR] or at the hearing before the [r]eferee**.

*Hubbard v. Unemployment Comp. Bd. of Rev.*, 252 A.3d 1181, 1188 (Pa. Cmwlth. 2021) (emphasis added).

The UCBR's findings of fact numbers 4-6 state:

4. On[] July 8, 2019, [E]mployer directed [C]laimant to take a random drug test.

5. On July 8, 2019, [C]laimant submitted a urine specimen for testing.

6. [C]laimant's drug and alcohol test tested positive for alcohol and cocaine metabolite[].

C.R. at 168.

The UCBR asserts that its factual findings were supported by the Record of Oral Interview (Oral Interview), the UC form questionnaire titled "Discharge – Drug or Alcohol Test" (Discharge Questionnaire), and the Claimant Questionnaire. Claimant did not object to these documents at the hearing and, thus, the Referee admitted them into evidence. Further, Claimant does not suggest that the UC Service Center accepted the Oral Interview, the Discharge Questionnaire, and the Claimant Questionnaire other than in accordance with its regular process, or that Claimant did not make the statements and representations contained therein.

With respect to finding of fact number 4, the Oral Interview reflects that Claimant admitted: "After I got back from my rehab[,] [Employer] wanted me

to do a test.  I guess it was [July 8, 2019].  I know it was a Monday."  C.R. at 32. Further, Leta testified that on July 8, 2019, Claimant "was given a random drug test . . . ."  C.R. at 68.  This record evidence supports finding of fact number 4.

Regarding finding of fact number 5, the only record evidence supporting this finding is the improperly admitted Lab Report.  Thus, finding of fact number 5 is not supported by substantial evidence.  Notwithstanding, the UCBR's finding that Claimant "submitted a urine specimen for testing" is a finding that is not necessary to the UCBR's determination that Employer had an established drug policy and Claimant violated it, given Claimant's admission that he failed the drug test.  C.R. at 168.  *See Monaghan v. Bd. of Sch. Dirs. of Reading Sch. Dist.*, 618 A.2d 1239, 1243 (Pa. Cmwlth. 1992) ("an unsupported finding of fact which is not necessary to the adjudication merely constitutes harmless error"); *see also Foreman v. Unemployment Comp. Bd. of Rev.* (Pa. Cmwlth. No. 1025 C.D. 2017, filed Aug. 22, 2018), slip op. at 9 ("because [the] finding of fact . . . was not necessary to the decision, the unsupported finding constitutes harmless error"); *Zurawski v. Unemployment Comp. Bd. of Rev.* (Pa. Cmwlth. No. 610 C.D. 2015, filed Sept. 9, 2015), slip op. at 5 n.3 ("An unsupported finding of fact which is not necessary to the adjudication constitutes harmless error.").[8]

Finally, with respect to finding of fact number 6, although substantial evidence does not support the UCBR's finding that Claimant tested positive for "cocaine metabolite[]," substantial evidence supports that he failed the drug test. The Discharge Questionnaire contains Claimant's acknowledgement to a UC Representative that he was discharged; that a failed drug test was the reason he was given for his discharge; **that he did fail the drug test**; and that Employer had an

---

[8] Pursuant to Section 414(a) of this Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a), an unreported panel decision of this Court issued after January 15, 2008, may be cited for its persuasive value, but not as binding precedent.  *Foreman* and *Zurawski* are cited for their persuasive value.

15

established substance abuse policy.[9] *See* C.R. at 33. In the Claimant Questionnaire, Claimant stated that personal and mental health issues were the reasons for the actions that caused him to be discharged, and he "admit[ted] to being involved in the incident that caused [his] separation." C.R. at 7.

Further, Leta's unobjected to testimony corroborated Claimant's admissions in the Claimant Questionnaire, the Discharge Questionnaire, and the Oral Interview. Specifically, Leta testified:

> [Claimant] was given a random drug test per [the Drug Policy]. The morning that he -- Monday morning. And [Employer] received a non-negative result at first, which means it had to be sent out for testing. . . . [W]e received the results on [July 12, 2019,] and we notified him on [July 13, 2019,] that h[is employment] was terminated due to a positive drug screen.

C.R. at 68.[10] Leta also presented Claimant's signed Employee Orientation form showing that Claimant acknowledged receipt of the Drug Policy. *See* C.R. at 68.

In *Consolidated Scrap Resources, Inc. v. Unemployment Compensation Board of Review* (Pa. Cmwlth. No. 1002 C.D. 2010, filed Dec. 30, 2010),[11] this Court reversed the UCBR's order affirming a referee's decision that granted benefits where the Court found that the claimant's statements admitting that he failed the drug test and explaining that drugs were in his system because he was around people who did drugs, was "competent evidence of ineligibility under Section 402(e.1) [of the Law], which requires proof only that the test was failed, not that the claimant actually took drugs." Slip op. at 7. Similarly, this Court concludes that there is competent record

---

[9] In response to the Discharge Questionnaire request for "the reason [he was] given for being discharged or suspended[,]" Claimant declared: "Failed [d]rug/[a]lcohol [t]est." C.R. at 33. In response to the question: "If separated as a result of failing a [d]rug/[a]lcohol test, did you fail the test[,]" Claimant answered "[y]es[.]" *Id.* In addition, Claimant responded affirmatively to the question, "[d]id your employer have an established substance abuse policy?" *Id.*

[10] Claimant did not object to this testimony.

[11] *Consolidated Scrap Resources* is cited for its persuasive value.

evidence that Employer had an established substance abuse policy and that Claimant failed Employer's drug test.

Claimant further argues that his alleged admissions do not prove he violated the Drug Policy because when he reported to the UC Representative that he had failed the drug test, he was merely communicating what Employer told him was the reason for his discharge, rather than actually admitting that he violated the Drug Policy. Claimant cites *Washington Health System v. Unemployment Compensation Board of Review*, 231 A.3d 79 (Pa. Cmwlth. 2020), wherein, prior to her drug test, the claimant disclosed that she used Cannabidiol oil to manage her cancer symptoms. "Following [the e]mployer's presentation of its case, [the c]laimant answered 'yes' in response to the referee's question as to whether [the e]mployer notified her that she had tested positive for the presence of marijuana." *Id*. at 82. The "[e]mployer argue[d] that [the c]laimant admitted that she 'failed' the drug test." *Id*. at 84. The *Washington Health System* Court rejected the employer's argument, noting that the claimant "admitted only that someone told her [she had failed the drug test]. This acknowledgement did not constitute an admission because she had no knowledge of the underlying fact. It was simply uncorroborated hearsay, which she had no burden to deny." *Id*.

In contrast to *Washington Health System*, here, Claimant admitted not only that a failed drug test was the reason for his discharge, but that he failed the drug test, personal and mental health issues were the reasons for the actions that caused him to be discharged, and his involvement in the incident caused his separation. *See* C.R. at 7. *See Greer*; *see also Dillon v. Unemployment Comp. Bd. of Rev.*, 68 A.3d 1054 (Pa. Cmwlth. 2013). Claimant's admissions contained in the Oral Interview, the Discharge Questionnaire, and the Claimant Questionnaire, which were admitted without objection and corroborated by Leta's unobjected to testimony, are sufficient to support the UCBR's decision denying UC benefits.

17

Finally, Claimant contends that the UCBR wrongly denied Claimant UC benefits because its denial was based on erroneously admitted evidence, and that properly objected to hearsay cannot support disqualification from UC benefits. This Court agrees with Claimant that erroneously admitted evidence cannot support a denial of benefits. However, "[a]n appellate court may affirm on other grounds where grounds for affirmance exist." *Martel v. Allegheny Cnty.*, 216 A.3d 1165, 1168 n.2 (Pa. Cmwlth. 2019). As discussed *supra*, Claimant's corroborated admissions support the denial of Claimant's UC benefits.

For all of the above reasons, the UCBR's order is affirmed.

_____
ANNE E. COVEY, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Kalvin Hauck,                                       :
                Petitioner                   :
                                        :
        v.                                         :
                                          :
Unemployment Compensation         :
Board of Review,                                :      No. 1351 C.D. 2020
                Respondent                 :

## O R D E R

AND NOW, this 23rd day of February, 2022, the Unemployment Compensation Board of Review's October 30, 2020 order is affirmed.

_____
ANNE E. COVEY, Judge